IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUELA CANCINO CONTRERAS MORALES, individually and as Successor-In-Interest to Ruben Mesa Morales, deceased; R.A.M., individually and as Successor-In-Interest to Ruben Mesa Morales, deceased, by and through his Guardian Ad Litem, Manuela Cancino Contreras Morales,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY OF DELANO, et al.<br><br>        Defendants. | Case No. 1:10-cv-1203-AWI-JLT<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc. 7.) |

**I.      The Court must screen the First Amended Complaint**

Plaintiffs are proceeding with a civil rights action pursuant to 42 U.S.C. § 1983. On July 7, 2010, plaintiffs filed an application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915. (Doc. 3) Because Plaintiff has been granted leave to proceed IFP, this Court must screen the First Amended Complaint ("FAC") under 28 U.S.C. § 1915(e)(2)(B), which requires the dismissal of a case at any time if the court determines that it (1) "is frivolous or malicious," (2) "fails to state a claim on which relief may be granted" or (3) "seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i),(ii) and (iii).

## II.     Legal authority

### A.     Section 1983

Plaintiff's FAC seeks damages under 42 U.S.C. § 1983. To warrant relief under this section, plaintiffs must show that the defendants' acts or omissions caused the deprivation of the their constitutionally protected rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Id. There must be an actual causal connection or link between the actions of each defendant and the deprivation alleged to have been suffered by plaintiffs. See Monell v. Department of Social Services, 436 U.S. 658, 691-692 (1978)(citing Rizzo v. Goode, 432 U.S. 362, 370-371(1976)).

There is no respondeat superior liability under 42 U.S.C. § 1983. Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993); Monell, 436 U.S. at 691 (the supervisor of someone who allegedly violated a plaintiff's constitutional rights is not made liable for the violation by virtue of that role). "Liability under § 1983 arises only upon a showing of personal participation by the defendant. (Citation.) A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citation omitted.

Recently, the Supreme Court rejected that a supervisor can be held liable for his mere "knowledge and acquiescence" in unlawful conduct by his subordinates. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009). The Court held,

> . . . respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. **In a § 1983 suit or a *Bivens* action--where masters do not answer for the torts of their servants--the term**

2

**"supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.**

Id., emphasis added.

### B.     Rule 8(a)

Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a). Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a complaint must give fair notice and state the elements of plaintiffs' claim plainly and succinctly. Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). In other words, the complaint must give the defendants fair notice of what constitutes the plaintiffs' claims and the grounds upon which they rest. Although a complaint need not outline all of the elements of a claim, it must be possible to infer from the allegations that all of the elements exist and that plaintiffs are entitled to relief under a viable legal theory. Walker v. South Cent. Bell Telephone Co., 904 F.2d 275, 277 (5th Cir. 1990).

In Ashcroft v. Iqbal, 129 S.Ct. at 1949, the Court observed,

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [Citations]. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [Citation].

The Court further clarified that,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. The Court instructed, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief. Id. at 1950.  However, the conclusions contained in the pleading "are not entitled to the assumption of truth."  Id.

### III.     Summary of the Allegations

Plaintiffs allege that their decedent, Ruben Alejandro Morales ("Morales"), was shot and killed by a member of the Delano Police Department on July 6, 2009.  (Doc. 7 at 8-9) At the time, Morales rented a room in the home of Maria Nunez.  Id. When Ms. Nunez arrived at the home at about midnight, she noticed that the front door was ajar and that there were lights flickering inside.  Id. Nunez called the police and when they arrived, she reported that Morales was lawfully inside.  Id. Although other officers inspected the home and "cleared it," Officers Mejia and Manuele entered the residence from the backyard.  Id.  When they encountered Morales in his bedroom, Mejia shot him at "point-blank" range.  Id.

After the shooting, Morales "lay dying on the floor" but neither Mejia nor Manuele provided medical attention in a timely fashion.  (Doc. 7 at 8-9) Other Delano Police Officers who were present at the scene, ignored Morales' need for medical attention.  Id. Eventually a call was placed requesting medical assistance.  Id.  Plaintiffs allege that Kern dispatched its own employees or dispatched agents of Kern to provide medical assistance but that this medical personnel did not arrive at the scene for 20 minutes despite being only five miles away at the time of the dispatch.  (Doc. 7 at 9) When the medical personnel arrived at the scene, Morales was still alive.  Id.  The medical personnel transported the decedent to Delano Regional Medical Center where he was pronounced dead at 1:10 a.m.  Id.

Based upon these factual allegations, the Plaintiffs seek to impose liability under 42 USC § 1983 for violations of Morales' Fourth, Fourteenth and Eighth Amendments rights and for violations of their Fourth and Fourteenth Amendment rights.  They seek to impose liability based upon state law claims for wrongful death, battery and negligence also.

### IV.     Named defendants

In the caption of the pleading, Plaintiffs' name the City of Delano, the City of Delano

Police Department and Kern County.  They name the Delano Police Chief, Mark DeRosia, and Delano Police Officers Jose Mejia and Shaun Manuele.

**V.     The City of Delano Police Department is not amenable to suit.**

The Court has reviewed Plaintiffs' claim that the City of Delano Police Department is amenable to suit.  As set forth in the Court's Order dated July 7, 2010, this municipal agency, is not amenable to suit.

The Ninth Circuit's last word on the subject was in United States v. Kama, 394 F.3d 1236, 1240 (9th Cir. 2005).[1]  In that case, the Court held, "municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983." Moreover, the Court's determination here is consistent with recent Eastern District decisions.  In Morris v. State Bar, 2010 U.S. Dist. LEXIS 36945, 6-7 (E.D. Cal. Mar. 10, 2010), the Court considered whether the City of Fresno Fire Department was amenable to suit.  The Court held,

> Municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983. Hervey v. Estes, 65 F.3d 784, 791 (9th Cir.1995). Other types of governmental associations are only subject to suit under Section 1983 if the parties that created them intended to create a separate legal entity. Hervey, 65 F.3d at 792 (intergovernmental narcotics team is not subject to suit). See also Sanders v. Aranas, 2008 U.S. Dist. LEXIS 6402, 2008 WL 268972, 3 (E.D.Cal. 2008) (the Fresno Police Department is not a proper defendant because it is a sub-division of the City of Fresno).
>
> The Complaint alleges claims against the Fresno Fire Department, as well as the City of Fresno. The City of Fresno is the proper party because it is the governmental entity considered a "person" under § 1983. The Fresno Fire Department is a "sub-unit" of the City of Fresno and is not a person under § 1983.

Id. Other recent decisions hold similarly.  "[M]unicipal departments and sub-units, including

---

[1] The Court acknowledges Streit v. County of Los Angeles, 236 F.3d 552, 565-566 (9th Cir. 2001). However, Streit is factually distinct from the situation here.  In Streit, the Court was concerned with whether the LA County Sheriff's Department was a separate legal entity for purposes of § 1983 liability, "in its function of managing jails." Baker v. County of Sonoma, 2009 U.S. Dist. LEXIS 14831 * at 16-17 (N.D. Cal. Feb. 10, 2009).  Here, traditional law enforcement functions are at issue.  Moreover, Karim-Panachi v. Los Angeles Police Department, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) fails to provide any analysis for its conclusion that *both* the City of LA and the LAPD could be held liable for the actions of police officers.  Instead, it merely cites to Shaw v. California Dep.'t of Alcohol Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986), which does not so hold.  Instead, Shaw holds that the doctrine of respondeat superior is inapplicable to a § 1983 action.  Thus, United States v. Kama, 394 F.3d at 1240, and the cases following it, are on point.

5

police departments, are generally not considered "persons" within the meaning of Section 1983. Navarro v. California, 2010 U.S. Dist. LEXIS 5388 at *18 (E.D. Cal. June 25, 2010); Wade v. Fresno Police Dep't, 2010 U.S. Dist. LEXIS 57093 at *10-11 (E.D. Cal. June 8, 2010); Garcia v. City of Merced, 2009 U.S. Dist. LEXIS 88277 at *5, n 4 (E.D. Cal. Sept. 25, 2009)(same); Gonzalez v. Merced County, 2009 U.S. Dist. LEXIS 40307 at *3, n. 1 (E.D. Cal. May 13, 2009)(same);  Wallace v. Sacramento Sheriff, 2007 U.S. Dist. LEXIS 79263 at *1 (E.D. Cal. Oct. 12, 2007);(same) Hunter v. County of Sacramento, 2006 U.S. Dist. LEXIS 74383 at *11 (E.D. Cal. Sept. 29, 2006)(same).  This rationale is followed by other districts within the Ninth Circuit also.  Ortega v. Chula Vista Police Dep't, 2010 U.S. Dist. LEXIS 66960 at *1-2 (S.D. Cal. June 29, 2010) (". . . Chula Vista Police Department lacks capacity to be sued under Section 1983 . . ."); Paschelke v. Doe, 2010 U.S. Dist. LEXIS 65187 at *3-4 (S.D. Cal. June 30, 2010) ("The Court agrees that dismissal of the San Diego County Central Detention Facility is appropriate as this Defendant is not a "person" subject to suit under § 1983."); Smith v. L.A. County, 2008 U.S. Dist. LEXIS 110059 at *22-23 (C.D. Cal. Nov. 6, 2008), ("[T]he Sheriff's Department and the County are duplicative defendants and it is unnecessary for plaintiff to sue both. Accordingly, the Sheriff's Department should be dismissed from this action."); Banks v. Clark County, 2010 U.S. Dist. LEXIS 32671 at *7-8 (D. Nev. Apr. 2, 2010); Moreno-Garcia v. Yakima Police Dep't, 2010 U.S. Dist. LEXIS 69213 at *5-6 (E.D. Wash. July 9, 2010) ("The Yakima Police Department is not a legal entity separate from the City of Yakima, and it lacks capacity to be sued.") Likewise, in Vance v. County of Santa Clara, 928 F. Supp. 993, 995-996 (N.D. Cal. 1996), the court held,

> The term "persons" encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities. Martin Schwartz and John Kirklin, Section 1983 Litigation: Claims Defenses and Fees, § 5.2 (2d ed. 1991). However, the term "persons" does not encompass municipal departments. "Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." Stump v. Gates, 777 F. Supp. 808, 816 (D. Colo. 1991).

1 Therefore, the legal authority belies Plaintiffs' claim that they can maintain this action against the City of Delano *and* its agency the City of Delano Police Department.

Moreover, though Plaintiffs assert that California Government Code section 38630 is evidence that the Police Department is a separate legal entity from the City of Delano, they ignore that the Chief of Police is appointed by the City Council and serves at "the pleasure of the city counsel." Cal. Gov. Code §§ 36505, 36506. Also, unless the City Council delegates the authority to the Police Chief or other person, it is the City Council, not the Police Chief, who has the power to hire police officers.[2] Cal. Gov. Code § 38631. Although the police chief is given control of the Police Department, he is not given budgetary control, which is vested in the City Council. Cal. Gov. Code §§ 37200 et seq.

Finally, despite Plaintiffs' arguments to the contrary, to allow the matter to proceed against the agency of the City of Delano and the City itself, ignores the likelihood of an improper award of a double recovery against a single funding source. Therefore, the Court will, once again, **DISMISS** the FAC as to the City of Delano Police Department.

**VI.  The FAC is vague due to its allegation that each defendant is responsible for the actions of every other defendant.**

The FAC seeks to impose liability upon Kern due to its action in "regulat[ing] medical services, including ambulance services within KERN COUNTY." (Doc. 7 at 5-6) Moreover, the FAC alleges quite clearly that DeRosia, Mejia and Manuele were employed by the City of Delano at the Delano Police Department. (Doc. 7 at 5) However, the FAC then veers off and seems to allege inconsistently that the individuals and the City of Delano and its police department are involved in a type of employment/agency relationship with the County of Kern. (Doc. 7 at 6) Similarly, the FAC alleges that each entity defendant and each individual defendant

---

[2] Ironically, the City Council retains the authority to contract with ambulance services "to serve the residents of the city as convenience requires." Cal. Gov. Code § 38794. Given this, Plaintiffs must contend, although they do not allege, that the City Delano somehow delegated this authority to the County of Kern.

7

is responsible for the actions of each other, including the action of hiring the individuals and, therefore, implicitly for the policies that gave rise to the alleged wrongful acts. Id.

Due to these inconsistencies, these allegations fail to give fair notice to all of the defendants, but most notably to Kern, what wrongful acts are attributed to each. On the other hand, if Plaintiffs believe that Kern is the employer of the individuals along with the Delano entity, they must plead facts to support these conclusions. Ashcroft v. Iqbal, 129 S.Ct. at 1950.

Based upon this significant ambiguity, the Court must **DISMISS** the FAC. However, the Court will grant leave to amend.

## VII.   The liability of the County of Kern

### A.   The FAC fails to give fair notice of the wrongful acts attributed to Kern

The FAC initially seems to claim that Kern is being sued due to its role in "regulat[ing] medical services, including ambulance services within KERN COUNTY." (Doc. 7 at 5-6, ¶ 15) The FAC clarifies that Kern "established criteria for the selection of qualified ambulance providers to provide ambulance services within KERN COUNTY." Id. Then the FAC states that when medical services were requested by the officers at the scene of the shooting that,

> KERN COUNTY dispatched medical personnel to the RESIDENCE. Plaintiffs are informed, believe and based thereon allege, that defendant KERN COUNTY or its agents took over twenty minutes to arrive at the scene of the shooting despite being located within five (5) miles of the scene of the shooting. When defendant KERN COUNTY or its agents arrived at the scene, Mr. Morales was still alive. Mrs. Nunez and neighbors could hear Mr. Morales breathing and making gurgling sounds as he was carried away. Mr. Morales was transported by defendant KERN COUNTY or its agents to Delano Regional Medical Center where he was pronounced dead at 1:10 a.m. on July 7, 2009.

Thus, in this portion of the FAC, Plaintiffs seem to allege that not only did Kern regulate and select ambulance providers but it also dispatched and operated the ambulance that responded to Morales. This is inconsistent with the earlier allegation and creates an ambiguity. Due to this the Court will **DISMISS** the FAC with leave to amend.

///

///

**B.     The failure to provide timely medical attention does not state a claim under 42 U.S.C. § 1983**

It is without dispute that a detainee who has been injured during a detention may state a claim against the detaining agency for failure to provide him medical care. Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983); Tatum v. City and County of San Francisco, 441 F.3d 1090, 1098-1099 (9th Cir. 2006). However, here, Morales was not in Kern's custody nor was he injured by employees of Kern in affecting his detention.

The law is clear that the government has no general duty to provide medical care to a private citizen except in limited circumstances not alleged here. For example, in Penilla By & Through Penilla, 115 F.3d 707, 709-711 (9th Cir. 1997), neighbors found the decedent on his front porch in medical distress and called 911. Id. The defendant-police officers arrived first and found Penilla to be in grave condition. Id. Despite this, the officers broke into the decedent's home, dragged him inside, locked the door and left him there. Id. All of this occurred after they cancelled the call to paramedics. Id.

In finding that the officers could be held liable for his death by failing to provide medical care, Penilla relied heavily upon DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989). In DeShaney, the United States Supreme Court held, "Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, **even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual**." (Emphasis added.) The Court continued, "While the State may have been aware of the dangers that [the victim] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." Id. at 201.

Penilla clarified that a constitutional duty to provide medical care is not triggered solely when the person is in custody. Penilla, at 710. However, this duty arises *only* if the state created the danger or increased the level of danger through its action. Penilla held, "We have interpreted

9

1  DeShaney to mean that if affirmative conduct on the part of a state actor places a plaintiff in
2  danger, and the officer acts in deliberate indifference to that plaintiff's safety, a claim arises under
3  § 1983." Id.  The Court outlined the "critical distinction" between a situation that may impose
4  liability and one that would not, depends on whether the state's action, rather than its inaction,
5  placed the person at risk. Id.

6   In Johnson v. City of Seattle, 474 F.3d 634, 636-637 (9th Cir. 2007), the plaintiffs were
7  injured at a Mardi Gras celebration.  They asserted a § 1983 claim against the police department
8  for its deficient policies regarding "large crowd disturbances" that resulted in the "deprivation of
9  their liberty interest in personal security" protected by the Fourteenth Amendment. Id. at 637.  In
10 the alternative, they argued that the police enhanced their danger and caused their injuries by
11 changing their enforcement plan to one that required a more passive presence and which was
12 limited to the perimeter of the crowd. Id.

13   In rejecting that the defendants owed a the plaintiffs a constitutional duty, the Court relied
14 upon DeShaney once again when it noted,

> In DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 109 S.
> Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court held that "a State's failure
> to protect an individual against private violence simply does not constitute a
> violation of the Due Process Clause." Id. at 197. The Court reasoned as follows:
>
> > [N]othing in the language of the Due Process Clause itself requires
> > the State to protect the life, liberty, and property of its citizens
> > against invasion by private actors. **The Clause is phrased as a
> > limitation on the State's power to act, not as a guarantee of
> > certain minimal levels of safety and security. It forbids the
> > State itself to deprive individuals of life, liberty, or property
> > without "due process of law, " but its language cannot fairly be
> > extended to impose an affirmative obligation on the State to
> > ensure that those interests do not come to harm through other
> > means.**
>
> Id. at 195.

24 (Emphasis added.)  Johnson rejected also that the defendants enhanced the danger of the situation
25 when it changed its crowd control plan. Id. at 641. "The decision to switch from a more
26 aggressive operation plan to a more passive one was not affirmative conduct that placed the

10

1  Pioneer Square Plaintiffs in danger, because it did not place them in any worse position than they
2  would have been in had the police not come up with any operational plan whatsoever." 
3  Therefore, the Court affirmed the trial court's dismissal of the § 1983 claim. Id. at 635.

4  In Estate of Amos v. City of Page, 257 F.3d 1086, 1089-1090 (9th Cir. 2001), the decedent
5  was involved in a car accident after which he left the scene and entered the Arizona desert.
6  When police arrived, they noted blood in the decedent's car. Id.  At the time, they conducted
7  only a cursory search for the decedent. Id. Nearly three years later, the decedent's remains were
8  located some distance from the collision scene. Id.

9  The decedent's estate sued because of the insufficient search efforts and asserted that they
10 violated the decedent's Fourteenth Amendment "substantive due process rights to life, personal
11 security, and bodily integrity." Estate of Amos, at 1090.  In rejecting this claim, the Court held
12 that, "'If the defendants deprived [Amos] of anything it was of some right to competent rescue
13 services. But … there is no such right in the Fourteenth Amendment.'" Id. at 1091.

14 Here, the FAC alleges that Kern dispatched its personnel or a private ambulance service
15 to the scene of the shooting.[3]  By this time, Morales already lay "dying . . . on the floor." (Doc. 7
16 at 8-9) Thus, the delay in arriving at the scene did not cause Morales' medical condition nor did
17 it exacerbate it.  Instead, Kern's action merely failed to remedy his medical condition and
18 deprived him of "competent rescue services." However, this is insufficient to state a
19 constitutional claim.

20 The allegations of the FAC that Kern should be held liable for improperly selecting the
21 ambulance service, likewise, will not impose constitutional liability.  In Tobin v. Washington,
22 2007 U.S. Dist. LEXIS 84358 (W.D. Wash. Nov. 5, 2007), the state licensed and re-licensed a
23 home which allowed it to provide daycare services. Id. at *4-5.  The home was located near a

---

[3] The inference presented by the pleading is that the shooting occurred within the jurisdiction of the City of Delano.  Thus, should they choose to continue to proceed against Kern, in any amended pleading, Plaintiffs should address the fact that California Government Code § 38794 vests the authority to select the ambulance service provider with the City Council of City of Delano, not with the County of Kern.

lake, that could be seen from the front porch. Id.  The licensing evaluator and re-evaluator were aware of the lake and were aware that the home did not have a fence around the front yard, although this was required by law.  Subsequently, the plaintiffs placed their two-year-old child in the home for daycare. Id.  One day when the daycare provider's attention was focused on other children, the plaintiffs' child left the home and went to the lake, where he drowned. Id.

The parents of the child sued and raised various legal theories including a claim under 42 USC § 1983. Tobin, at *5-6.  They claimed that the daycare was a "state created danger" due to its acts of licensing and re-licensing it despite that the home did not comply with the state law that required a front yard fence. Id. at 15-16.  In rejecting this argument, the Court held,

> . . . there is no evidence that the state took an affirmative action which placed G. M. T. in a situation that was more dangerous than the one in which they found him. The named Defendants did not require that G. M. T. attend Fish's daycare. The named Defendants did not take G. M. T. out of the custody of his parents and place him in the daycare. The only action taken by the above named Defendants was the decision to license and renew the license of the daycare which Plaintiffs contend was not in compliance with state regulations governing fencing for daycares. That action is simply not sufficient to prevail. See Ruiz v. McDonnell, 299 F.3d 1173 (10th Cir. 2002). As was the case in Johnson and Ruiz, here there was no affirmative state action: no involuntary exposure to harm as a result of a state actor's command. None of the state created danger theory cases, cited by either party or that have been found to state a claim in the Ninth Circuit, include a case where the state's affirmative conduct was the licensing of a facility which arguably was in violation of a regulation. Plaintiffs have failed to demonstrate any violation of their constitutional rights caused by the named Defendants' actions here.

Id. at 20-21.  Thus, Kern's act in "regulating" or "selecting" an ambulance provider, is insufficient to impose a constitutional duty.  On the other hand, the claim that the non-Kern ambulance provider was an agent of Kern, likewise, does not state a claim under 42 USC § 1983 because there is no respondeat superior liability in constitutional litigation. Palmer v. Sanderson, 9 F.3d at 1437-1438; Monell, 436 U.S. at 691.

Thus, for all of the these reasons, the Court finds that the complaint is vague and fails to state a claim against the Kern.  Therefore, the Court will **DISMISS** the FAC with leave to amend.

12

1 **VIII. Conclusion**

2     The Court must dismiss Plaintiffs' FAC as to all defendants because it is vague and, as
3 such, it fails to state a cognizable claim. Moreover, the FAC fails to state a claim against the
4 County of Kern. Finally, the Delano Police Department is not amenable to suit. However, the
5 Court will grant Plaintiffs an opportunity to amend the complaint to address the above
6 deficiencies.

7     Plaintiffs are informed that the Court cannot refer to a prior pleading in order to make
8 Plaintiffs' amended complaint complete. Local Rule 220 requires that an amended complaint be
9 complete in itself without reference to any prior pleading. This is because, as a general rule, an
10 amended complaint supercedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th
11 Cir. 1967). Once Plaintiffs file an amended complaint, the original pleading no longer serves any
12 function in the case. Therefore, in an amended complaint, as in an original complaint, each claim
13 and the involvement of each defendant must be sufficiently alleged.

14     Accordingly, it is hereby **ORDERED** that:

15     1.    Plaintiffs' complaint is **DISMISSED WITH LEAVE TO AMEND**; and
16     2.    Plaintiffs are **GRANTED** <u>14 days from the date of service of this order to file an
17     amended complaint.</u> The amended complaint must reference the docket number
18     assigned to this case and must be labeled "Second Amended Complaint."

19     Failure to file an amended complaint in accordance with this order will result in a
20 recommendation that this action be dismissed pursuant to Local Rule 110.

21

22 IT IS SO ORDERED.

23 Dated:   **July 23, 2010**                          **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE
24

25

26

27