IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUELA CANCINO CONTRERAS MORALES and R.A.M., a minor, | ) ) ) | 1:10-CV-1203 AWI JLT |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN |
| v. | ) ) | PART THE PARTIES' CROSS-MOTIONS FOR SUMMARY |
| CITY OF DELANO; MARK P. DEROSIA; JOSE MEJIA; SHAUN MANUELE; and DOES 1 through 50, inclusive, | ) ) ) ) | JUDGMENT OR SUMMARY ADJUDICATION |
| | ) | Doc. No's. 42 and 46 |
| Defendants. | ) ) |  |

This is an action for damages arising out of the death of Ruben Mesa Morales ("Decedent") as a result of a gunshot wound inflicted by Jose Mejia ("Mejia"), a reserve officer of the City of Delano Police Department, acting in the course and scope of his employment. The action is brought by Manuela Cancino Contreras Morales individually and as successor in interest of Decedent and by R.A.M., a minor child of Decedent by and through his Guardian ad Litem, Manuela Morales (collectively, "Plaintiffs"). In the currently-operative Second Amended Complaint ("SAC"), Plaintiffs allege a total of seven claims for relief against defendants City of Delano, Mark P. Derosia ("Derosa"), Delano Chief of Police, Mejia and Shaun Manuele ("Manuele"), a City of Delano police officer. Defendants Derosa, Meja and Manuele (the "individual Defendants") are each sued in both their individual and official capacities. Currently before the court is Plaintiffs' motion for partial summary judgment on a portion of their first claim for relief. Document # 46. Also currently before the

court is Defendants' motion for summary judgment as all claims against all Defendants. Document # 42.  Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

## FACTUAL BACKGROUND

Although most of the facts alleged in the parties' cross-motions for summary judgment are sharply disputed, a short list of stipulated facts has been submitted from which a general picture of the events giving rise to this action can be drawn.  Decedent married Plaintiff Morales in Zacatecas, Mexico in 2000.  They had one child together, R.A.M., who was born in the United States in Georgia.  Decedent is a veteran of the United States military and lived in a converted garage apartment (hereinafter, the "apartment") that was attached to a house owned by Maria and Gabriel Nunez in Delano, California.  Except for the birth of R.A.M. in Georgia, Plaintiffs have continuously resided in Zacates, Mexico.  Decedent was paying a monthly rent of $500.00 per month to Maria and Gabriel Nunez at the time of his death.

Shortly after midnight on July 7, 2009, Mrs. Nunez returned home with her three children and noted that the front door was open and lights were flickering inside her home. After calling her husband at work, she called 9-1-1.  Police officers arrived shortly thereafter. Mrs. Nunez was approached by Officer Felix, a non-party to this action, as Mrs. Nunez stood on the sidewalk in front of the residence.  Mrs. Nunez, who spoke only Spanish, told Officer Felix that she rented a portion of her home to a person.  Officer Felix was not certified as Spanish speaking by the Delano Police Department.  Although there is some dispute over the details, it is generally not disputed that officers Mejia and Manuele were deployed to the back yard of the residence after which other officers entered the house by the front entrance.  While the parties do not disputed that one of the responding non-party officers, Officer Felix, was told there was a renter who lived on the property in the apartment, it is sharply disputed whether Mejia or Manuele knew, or should have known, of the presence of Decedent in the apartment.

2

Although it is not entirely clear to the court whether the apartment can be accessed from the front of the house, there is no dispute that the apartment cannot be accessed from the inside of the main part of the house.  It is not disputed that Mejia and Manuele entered through an unlocked doorway in the backyard leading into Decedent's apartment.  It is not disputed that Mejia fired a single shot from his service pistol that struck Decedent and that the gunshot would ultimately resulted in Decedent's death.  It is not disputed that Decedent was unarmed at the time of his shooting.

## PROCEDURAL HISTORY

The original complaint in this action was filed on June 30, 2010.  The currently operative SAC was filed on August 6, 2010.  Plaintiffs' SAC alleges a total of seven claims for relief; four claims are alleged pursuant to 42 U.S.C. § 1983 and the remaining three are alleged pursuant to California common law for wrongful death, battery and negligence, respectively.  Although Plaintiffs' first claim for relief is set forth as a single claim against officers Mejia and Manuele, it actually alleges violation of Decedent's rights under the Fourth and Fourteenth Amendments on four separate legal theories; unlawful warantless search, unlawful use of force, unlawful denial of Decedent to access to medical care necessitated by Defendants' actions, and falsification of evidence in furtherance of a conspiracy to deprive Decedent to access to courts.  Plaintiffs' second claim for relief alleges the violation of Plaintiffs' Fourteenth Amendment right to the companionship and support of Decedent.  Plaintiffs' first and second claims for relief are alleged against Mejia and Manuele.

Plaintiffs' third claim for relief is alleged against City of Delano pursuant to Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978).  Plaintiffs' fourth claim for relief is alleged against Police Chief DeRosa in his individual capacity and the City of Delano for supervisory liability pursuant to 42 U.S.C. § 1983.  Plaintiffs' fifth claim for relief for wrongful death under California common law is alleged against all defendants; the sixth claim for relief alleges common law battery against Mejia only, and the seventh claim for relief alleges

negligence against Mejia and Manuele.

The parties' cross-motions for summary judgment or summary adjudication were filed on September 23, 2011.  Each party filed an opposition to the motion of the other party on October 24, 2011.  The parties filed their respective replies on October 31, 2011.  The hearing on the cross motions was vacated and the matter was taken under submission as of November 7, 2011.

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party always bears the initial responsibility of informing and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary

judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

5

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

Plaintiffs seek summary adjudication only as to the portion of their first claim for relief that alleges the warrantless, no-knock entry into Decedent's apartment was in violation of his rights under the Fourth Amendment.

### A.  Factual Issues

In making the determination of Plaintiffs' entitlement to summary judgment on this issue, the first issue presented by Defendants' opposition is how the court is to address the factual context of Plaintiffs' claim.  Defendants' primary contention is that the actions of Mejia and Manuele were objectively reasonable in light of the facts known to them.  Prominent among Defendants' objections to Plaintiffs' proffer of undisputed material facts is their objection under Graham v. Connor, 490 U.S. 386 (1989) to any fact that was not known to either Mejia or Manuele at the time of the entry into Decedent's apartment.

The Supreme Court's decision in Graham establishes three general rules of Fourth Amendment jurisprudence.  First, Graham establishes that Fourth Amendment claims,

whether based on unlawful search or unlawfull application of force, are determined under the standard of objective reasonableness, not under the Fourteenth Amendment substantive due process standard.  Id. at 394-395.  Second, Graham establishes that the determination of reasonableness is to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Id. at 396.  Third, Graham, establishes that the reasonableness inquiry is objective, that is, without reference to the officer's underlying intent and motivations.  Id. at 397.

Plaintiffs' undisputed material facts are contested in almost every particular.  In a disputed summary judgment motion under Fed.R.Civ.P. 56, the trial court is obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.  Murphy v. Schneider National, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004).

Unfortunately it is frequently the case, and is so here, that where parties seek to "cover all the bases" factually, the facts the court finds critical to its decision suffer from underdevelopment.  With regard to Plaintiff's proffer of undisputed material facts, the court agrees with Defendants that the majority of these are irrelevant.  With regard to Defendants, so much effort has gone into establishing what officers Mejia and Manuele did not know that the court is left with the conclusion that these officers were dispatched to "cover the back" in a state of near-perfect ignorance.  The court notes that certain aspects of Defendants' version of the facts are sharply disputed; principal among these is Defendants' allegation that Mejia and Manuele had neither actual or constructive knowledge of Decedent's presence in the apartment or of his status as a renter.  Were the court considering here Defendants' motion for summary adjudication of this issue, that factual dispute alone would be sufficient to defeat Defendants' motion.  However, Plaintiffs' motion is currently under consideration and the court must accept Defendants' version of the facts to the extent the facts are disputed.

Accepting Defendants' representation of the facts as true, officers Mejia and Manuele

arrived at the scene at about the same time as the other officers and were told to "cover the back" knowing only that there had been a call reporting that the front door was found to be ajar/open when it should not have been, and that there was a light on inside when there should not have been. Nothing else. Officers Mejia and Manuele had no knowledge of whether anyone had tried to make contact with anyone inside the apartment or Mrs. Nunez's (hereinafter, the "residence") and did not attempt to do so themselves. See Plaintiff's UMF # 46 (none of the responding officers knocked on the apartment front door or windows). As noted above, Mejia and Manuele had no knowledge of any conversation between Mrs. Nunez and the other officers or of the search of the Nunez residence or of the status of the other officers following their search. By combining together Plaintiff's UMF's numbered 46 (no attempt to call out to anyone on the inside or announce police presence) and 51 (no knock upon entry by Mejia and Manuel) the court concludes that Mejia and Manuele entered the space rented by Decedent through an unlocked door without knocking or announcing.

The court notes that Defendants invite the court to speculate that Mejia and Manuele were caught up in rapidly evolving facts requiring split-second decision making. There are absolutely no facts to indicate this was the case. At most, the facts permit the conclusion that Mejia and Manuele were deployed to "cover the back," which they did, and where nothing much appears to have happened. There were no fleeing suspects, no shots fired, no voices indicating urgency, and no radio transmissions indicating an escalating situation. Neither party has developed the facts surrounding the entry with a great deal of precision so the court is left with the understanding that Mejia and Manuele "covered the back" for some period of time not knowing what the other officers were doing. At some point, and for no stated reason, Mejia and Manuele decided to enter an open door without knocking or announcing and without any knowledge where the door would lead.

Defendants allege, and the court accepts as true for purposes of this discussion, that Mejia and Manuele did not know if, or when, the other officer commenced a search of the

residence from the front; did not know that the search of the residence concluded without finding anything amiss; and did not know that Mrs. Nunez had communicated to officers Felix and Ward that the area comprising the garage had been converted into an apartment and was occupied by Decedent.  The court also accepts as true that sometime after the radio broadcast of the "code 4" message, Mejia and Manuele entered without knocking or announcing through a partially-opened door in the back yard that they did not know entered into the space that was being rented by Decedent. There is, of course, no dispute that Mejia and Manuele entered without a warrant.

The question posed by Plaintiffs' motion for summary adjudication is whether the warrantless, no-knock entry by Mejia and Manuele was lawful.

**B.  Fourth Amendment Violation**

> "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (footnote omitted). The presumption of unconstitutionality that accompanies "the [warrantless] entry into a home to conduct a search or make an arrest" may be overcome only by showing "consent or exigent circumstances." Steagald v. United States, 451 U.S. 204, 211 (1981).

Lopez-Rodriguez v. Mukasey, 536 F.3d 1012, 1016 (9th Cir. 2008).  To these two fundamental exceptions to the general warrant requirement, Defendants add the "emergency exception."  Defendants claim all three apply with respect to the entry by Mejia and Manuele.

### *1.  Emergency Exception*

As Defendants correctly point out, the emergency exception derives from the care-taking function and requires that there be reasonable grounds to believe there was an emergency that required immediate assistance to preserve life or property.  See Defendants' Opposition, Doc. # 52 at 17:1-8 (citing Espinosa v. City & County of San Francisco, 598 F.3d 528, 534 (9th Cir. 2010); Hopkins v. Bonvicino, 573 F.#d 752, 763-764 (9th Cir. 2005)).  The factual allegations presented in this case give no hint of the existence of a situation that would invoke the care-taking function of the police.  The only information available to the officers

9

was that there was a house with the front door open and a light on where there should have been no one home.  No reasonable officer could make a determination that an emergency existed from those facts.  The court finds Defendants' version of the facts does not support the proposition that the entry was justified on the basis of an emergency.

### 2. Exigent Circumstances

Next, Defendants contend that the entry by Mejia and Manuele into the space rented by Decedent was justified by exigent circumstances.  "There are exigent circumstances to justify a warrantless entry by police officers into a home if the officers have a reasonable belief that their entry is 'necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.' [Citation.]" Huff v. City of Burbank, 632 F.3d 539, 544-545 (9th Cir. 2011) (quoting Fisher v. City of San Jose, 558 F.3d 1069, 1075 (9th Cir. 2009)).  Reliance on the exigent circumstances exception requires that governmental defendants offer facts to prove: (1) that the officer had probable cause to search the house; and (2) that "exigent circumstances justified the warrantless intrusion." United States v. Johnson, 256 F.3d 895, 205 (9th Cir. 2009).  The parties do not seem to dispute that Mrs. Nunez's 9-1-1 call was sufficient to establish probable cause for entry into the residence.  There remains, then, the issue of whether there existed an exigent circumstance with regard to the entry of Mejia and Manuele into the apartment.

To make the case that exigent circumstances existed with regard to the warrantless, no-knock entry by Mejia and Manuele, Defendants rely principally on Murdock v. Stout, 54 F.3d 1437 (9th Cir. 1995).  In Murdock, the initial evidence that police encountered that indicated exigent circumstances consisted  of a neighbor's report of suspicious activity and the observation of an open door at the rear of the house.  The Murdock court noted that, had the responding officers known only those facts, in the absence of any other physical evidence of burglary, there would have been little doubt that exigency would not have been demonstrated.

10

Id. at 1441-1442.  However, the Murdock court noted that facts subsequently determined by the police officers, facts not in evidence here, tipped the scales in the officers' favor. Specifically, the Murdock court noted that the officers observed that lights and a television were on and then "prudently attempted to make contact with the resident," including shouting twice into the home and calling the telephone number for the house.  Id. at 1442.  Defendants' reliance on Murdock is unavailing specifically for the reason that there is no evidence that Mejia or Manuele had any additional information to tip the scales in favor of determining there was an exigent circumstance.  So far as the court can determine from Defendants' version of the facts, Mejia and Manuele deployed to the back yard knowing only that the homeowner had observed a door ajar and lights on.  The officers made no attempt to make contact with anyone on the inside and had no knowledge whether any other officers had done so.

In addition, and probably most critically, the Murdock court held that, where entry could be accomplished with no damage to property, "only mild exigency need be shown."  Id. This proposition was rejected in LaLonde v. County of Riverside, 204 F.3d 947, 956 - 957 (9th Cir. 2000).  Thus, to the extent there is any suggestion derived from Murdock that Mejia and Manuele could perform a warrantless, no-knock entry into the apartment on a theory of exigent circumstances because the door was not locked, that suggestion is rejected.  What Murdock makes clear to this court is that what distinguishes an exigent circumstance from one that is not exigent is some fact or facts *in addition* to the observation that the door is open and the lights are on when they should not be.  The absence of any other physical evidence of exigency, coupled with the lack of any effort by the officers, including Mejia and Manuele, to announce themselves or to make any effort to establish that no one was lawfully present convinces the court that the facts of this case, as presented by the parties and construed in a light most favorable to Defendants, lies firmly outside the realm of circumstances that are known and accepted to constitute exigent circumstances.

11

### 3. Consent

Consent is a closer call but is nonetheless problematic for Defendants.  Neither party alleges that Mrs. Nunez gave actual consent for a search to any officers and, in any event, it is factually established that neither Mejia or Manuele spoke to Mrs. Nunez, so neither of them could have reasonably believed they had been given express permission to enter or search.  Likewise, since neither Mejia or Manuele knew that a search was being or had been conducted by the other officers, they had no reason to believe that express permission to conduct a search had been given at a later time by Mrs. Mejia.  The only remaining possibility is that the officers had implied consent to search.   It is here that the lack of development of relevant facts and focused legal argument mentioned previously by the court comes into play.

For reasons not apparent to the court, the parties seem to have skipped over the crucial question of whether permission to search is necessarily implied by a 9-1-1 call and, if so, who may claim the implied consent and for what scope of search.  No party has cited, nor has the court been able to find case authority for the proposition that consent to search may be implied from a 9-1-1 call or, if so, what scope of search is implied and what information must be made available by the reporting party to confer implied consent.  Given the fact that Mrs. Nunez was at the scene, that communications with her had been established prior to any entry of the residence by any officers, and that the officers were presumably in radio contact with each other, the court can see absolutely no reason why it should be required to presume implied consent to search as to Manuele or Mejia.  A valid source of express consent was at hand and the court presumes that reasonable officers on the scene would have availed themselves of the readily-available express consent.

The parties' extensive argument regarding whether or not Mrs. Nunez had actual or apparent authority to consent to the search of the apartment misses the crucial question of whether she gave consent at all, or in the alternative, whether there was a legal basis for Mejia and Manuele to presume consent as to *their* entry.  To the extent that consent may be implied

12

by, or was expressed when the officers entered the front of the residence at the direction or request of Mrs. Nunez, that fact was not known to the officers in the back yard and could not have been reasonably surmised by them given their asserted extensive ignorance of what was going on during the search.

Defendants' arguments to the contrary appear to be predicated on two lines of argument the court finds unpersuasive. The first is that Defendants Mejia and Manuele reasonably believed they were in a rapidly-evolving situation involving a burglary suspect and split-second decision making. The court finds that what Manuele and Mejia were confronted with is an open door and a light left on inside of the residence. The rest is surmise that fails to establish exigency. See LaLonde, 204 F.3d at 957 (burden to show evidence of exigent circumstance not satisfied by speculation on what the conditions might have been).

Second, Defendants argue that the reasonability of Defendants' actions must be judged based on what they were actually, subjectively aware of. As previously discussed, this is not the case. Defendants' actions are judged under the totality of the circumstances that a reasonable police officer would have known at the time under the existing circumstances. An officer may not take refuge in ignorance of facts that a reasonable officer would have known or felt compelled to find out. The court has considerable difficulty with the proposition that a reasonable officer, having as little actual knowledge of the situation as was apparently the case here, would have felt justified in making a no-knock entrance without bothering to communicate with others to obtain more information. It makes no difference that the officers subjectively believed that the door they were entering was part of Nunez's residence. Given that the Mejia and Manuele did not know if Nunez had given consent to search, did not know whether the officers had entered the residence or that they were going to do so, and did not know whether anyone had attempted to determine whether there was an innocent person inside of the residence or apartment, Mejia and Manuele had no objectively reasonable basis to presume consent to make the no-knock entry into the apartment.

13

It bears emphasizing what the court considers critical to its determination of the question of whether Decedent's Fourth Amendment Rights were infringed by the entry of Decedent's apartment by Mejia and Manuele.  The crucial facts are: (1) Mejia and Manuele were deployed to "cover the back" and did so having no knowledge of the status of the other officers actions or of any other facts other than the front door being ajar and one or more interior lights being on in the residence; (2) during what the court presumes to be a not-negligible length of time, nothing happened that would have indicated to Mejia and Manuele any change in circumstance; (3) Mejia and Manuele undertook the entry without first obtaining any more than the very minimum information they had when they were deployed to the back yard; and (4) the entry was, for no apparent reason, undertaken without knocking or announcing.  The court is mindful that, in taking all the disputed facts in the light most favorable to Defendants, it has been required to make some assumptions as to the totality of the facts that Mejia and Manuele encountered.

### C. Qualified Immunity

Defendants contend that, even if Decedent's Fourth Amendment rights were violated with regard to warantless, no-knock entry of his apartment by Mejia and Manuele, those Defendants are nonetheless shielded from liability by qualified immunity.  "Qualified immunity can shield government officials from individual civil liability where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' [Citation.]" Huff v. City of Burbank, 632 F.3d 539, 547-548 (9th Cir. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "We use a two-step analysis to determine whether the facts show that: (1) the conduct of the officers violated a constitutional right; and (2) the right that was violated was clearly established at the time of the violation." Huff, 632 F.3d at 548.  "While the constitutional violation prong concerns the reasonableness of the officers *mistake of fact*, the clearly established prong concerns the reasonableness of the officer's *mistake of law*." Torres v. City of Madera, 648 F.3d 1119,

14

1127 (9th Cir. 2011) (italics in original).

> Qualified immunity is "an entitlement not to stand trial or face the other
> burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The
> privilege is an immunity from suit rather than a mere defense to liability. Id.
> Accordingly, courts have repeatedly stressed "the importance of resolving
> immunity questions at the earliest possible stage in litigation." Hunter v.
> Bryant, 502 U.S. 224, 227 (1991) ( per curiam ). Because qualified immunity is
> an affirmative defense, the burden of proof initially lies with the official
> asserting the defense. Harlow, 457 U.S. at 812.

Padilla v. Yoo, 633 F.Supp.2d 1005, 1031 (N.D. Cal. 2009).

The court begins by noting that the procedural context of the question of qualified immunity is presented somewhat non-typically here where the motion for summary adjudication is by a *plaintiff* whose claim is against a defendant who asserts the defense of qualified immunity.  While an official sued in his individual capacity may prevail on a defensive summary judgment motion by showing *either* the absence of a constitutional violation *or* that the right in question was not clearly defined at the time of the violation; a *plaintiff* seeking summary judgment on the same claim must prove *both* the constitutional violation *and* that the right was clearly defined.  See Mueller v. Auker, 576 F.3d 979, 989 (9th Cir. 2009) (summary judgment in favor of plaintiff on substantive claim, coupled with denial of qualified immunity defense, is equivalent to final judgment on the merits).

To recap the court's findings with regard to Plaintiffs' claim for Fourth Amendment violation resulting from the entry by Mejia and Manuele, the court finds that the facts, as viewed in the light most favorable to Defendants tend strongly to support Plaintiffs' unlawful entry claim.  However, as noted above, both parties seem to have skipped over the factual and legal element the court finds most crucial to the determination of Plaintiff's claim; that is, Defendants have not shown precisely how, or on what legal basis, Mejia and Manuele could reasonably have believed they had consent to enter through the partially-opened door (whether or not they subjectively believed it was part of the residence) without knocking or announcing.  Likewise, Plaintiffs have not been clear on whether any of the responding officers had actual or implied consent and how that consent, if any, was communicated.  The court again points

out that it has performed at least a cursory search for case authority for the proposition that a 9-1-1 call confers some form of consent to search with negative results.  That, coupled with the scarcity of facts pertaining to the issue of actual or implied consent leaves the court in a position where it feels that further briefing is essential to complete the analysis of whether Defendants Mejia and Manuele are entitled to the defense of qualified immunity.

The court finds that the rights of the parties should not be decided on the basis of the court's decision on a sub-issue that neither party has briefed sufficiently.  Therefore, the parties will be asked to submit further briefing on the issue of implied or actual consent for the search and to make such additional factual allegations as may be relevant to the court's decision and admissible under summary judgment rules.  The court will stay determination of Plaintiff's motion for partial adjudication until the additional briefing is complete.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Motion for Summary Judgment as to Defendant DeRosia as Proper Defendant

Defendants move for summary judgment as to all claims against Defendant DeRosia on the ground DeRosia was not the cause of any constitutional harm Decedent may have suffered.  An examination of Plaintiffs' SAC indicates DeRosia is sued in both his individual and official capacities for inadequate training or supervision.  The Ninth Circuit "has long permitted plaintiffs to hold supervisors individually liable in § 1983 cases when culpable action, or inaction, is directly attributed to them."  Starr v. Baca, 652 F.3d 1202, 1205 (9th Cir. 2011).

> In *Larez v. City of Los Angeles,* 946 F.2d 630 (9th Cir. 1991), we explained that to be held liable the supervisor need not be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.' *Id.*. at 645.  Rather, the supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 646 (internal citations, quotation marks, and alterations omitted).

Starr, 652 F.3d at 1205-1206.

16

1    Defendants' argument in favor of summary judgment recognizes that Plaintiff's SAC

2    asserts the supervisor claim against DeRosia in both his individual and official capacities.

3    With regard to the suit against DeRosia in his individual capacity, Defendants argue only that

4    DeRosia was not present at the time Decedent was injured and so could not have acted under

5    color of law to cause any constitutional harm to Decedent.  This assertion completely misses

6    the point of supervisory liability which places liability on supervisors in their individual

7    capacity where it can be shown that the supervisor's action were a substantial cause of the

8    constitutional harm because the officials who actually performed the acts leading to the harm

9    were inadequately trained, supervised or disciplined.  Personal participation in the acts that

10   directly lead to the constitutional harm are not a necessary element of supervisory liability.

11   The bulk of Defendants' argument in favor of summary judgment as to DeRosia is

12   aimed at the proposition that a suit against an officer in his *official* capacity is the same as a

13   suit against the entity and therefore the supervisory officer in his official capacity is an

14   unnecessary party to the action.  See Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).

15   Plaintiffs doe not dispute Defendants' contentions with regard to an action against a

16   supervisor in his official capacity.  Rather, Plaintiffs point to evidence, primarily in the form

17   of expert opinion testimony, tending to show that both the training that Defendant Mejia

18   received prior to the shooting, and the review of cases of officer involved shootings, including

19   Mejia's shooting in this case, are not adequately investigated and retraining or other corrective

20   action is not taken.  See Declaration of Roger A. Clark, Document # 61 at ¶ 12 (listing

21   conclusions regarding insufficiency of police officer training and supervision and

22   insufficiency of investigation of OIS instances).

23   The court construes Plaintiffs' Fourth Claim for Relief, as set forth in the SAC, as

24   alleging a claim against DeRosia in his *individual* capacity for deficient supervision and

25   training.  The merits of Plaintiffs' supervisory claim against DeRosia will be discussed below.

26   The court finds Defendants' argument that DeRosia is not a proper defendant because he did

27

28                                                    17

not personally participate in the conduct giving rise to Decedent's harm to be without merit.

**II.  Motion for Summary Judgment as to Individual Defendants Manuele and Mejia**

Plaintiff's first claim for relief alleges violation of Decedent's rights under the Fourth Amendment.  Four separate theories of violation are alleged in the single claim for relief.  They are; unlawful entry/search of the premises, unlawful application of force in performing a seizure, unlawful delay in securing aid for injuries caused by the officers' actions, and conspiracy to deny access to the courts by way of cover-up.  Each of these sub-claims are alleged against both Mejia and Manuele.

### A.  Unlawful Entry - Manuele and Mejia

With regard to the allegation of an unlawful entry into the apartment by Decedent, Defendants' arguments for summary judgment are close to, or the same as, those made in opposition to Plaintiffs' motion for summary adjudication on the same issue.  As is evident from the discussion above relating to Plaintiffs' motion for summary adjudication on the issue of unlawful entry, the court concludes that Defendants have definitely not carried their burden to show there remains no issue of material fact as to the entry of Mejia and Manuele into the apartment rented by Decedent.  There is no question that both officers entered.  As discussed above, Defendants have failed to show that there were exigent circumstances requiring the entry of Mejia or Manuele through the unlocked door that was an entry way into the apartment rented by Decedent.  Even if it could be established that the 9-1-1 call Mrs. Nunez made was sufficient to confer implied consent to search the residence, Defendants would still not be entitled to summary judgment because the facts, now taken in the light most favorable to Plaintiffs, establish that Mrs. Nunez informed all the police responders present that the apartment had a renter.  If a jury could find that Manuele and Mejia knew or reasonably should have known that the apartment had a renter, they could not reasonably believe they had permission to enter that space.  The court therefore finds that summary judgment is not appropriate as to the entry of both Manuele and Mejia into the apartment occupied by

1    Decedent.

2         ***B. Unlawful Use of Force***

3         A seizure is a "governmental termination of freedom of movement through means

4    intentionally applied," Jensen v. City of Oxnard, 145 F.3d 1078, 1083 (9th Cir.1998) (internal

5    quotation marks and citation omitted), and occurs "whenever [an officer] restrains the

6    individual's freedom to walk away." Robins v. Harum, 773 F.2d 1004, 1009 (9th Cir.1985).

7    An intentional shooting by a police officer constitutes a seizure for purposes of the Fourth

8    Amendment. Jensen, 145 F.3d at 1078. "To determine if a Fourth Amendment violation has

9    occurred, we must balance the extent of the intrusion in the individual's Fourth Amendment

10   rights against the government's interests to determine whether the officer's conduct was

11   objectively reasonable based on the totality of the circumstances. [Citation.]" Espinosa v. City

12   and County of San Francisco, 598 F.3d 528, 537 (9th Cir. 2010) (citing Graham v. Connor,

13   490 U.S. 386, 396-397 (1989). "An objectively unreasonable use of force is constitutionally

14   excessive and violates the Fourth Amendment's prohibition against unreasonable seizures."

15   Torres v. City of Madera, 648 F.3d 1119, 1123-1124 (9th Cir. 2011). "Law enforcement

16   officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat

17   to the officer or others, or is fleeing and his escape will result in a serious threat of injury to

18   persons." Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir. 1997).

19        A court analyzes the reasonableness of the force employed in police seizure according

20   to the factors set forth by the Supreme Court in Graham. The Graham, Court employed  "a

21   non-exhaustive list of factors" which include "(1) the severity of the crime at issue; (2)

22   whether the suspect poses an immediate threat to the safety of the officers or others; and (3)

23   whether the suspect actively resists detention or attempts to escape." Liston v. County of

24   Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (citing Graham, 490 U.S. at 388). The central

25   issue in an action for unlawful use of force is whether the victim of the force used presented

26   an immediate threat to the safety of the officers or bystanders. See Shannon v. City of Costa

27

28                                                    19

Mesa, 46 F.3d 1145, 1995 WL 45723 (9th Cir. 1995) at *4 (the most important element in an excessive force claim is whether the suspect poses an immediate threat to the safety of the officers or others).

### 1. Mejia

Putting aside the issue of whether Mejia and Manuele were legally within the apartment space rented by Decedent, Defendants allege a set of facts that, if found true, would tend to establish that as Mejia and Manuele advanced down the narrow hallway after entering from the outside, they heard a sound they thought might be an intruder preparing to resist the police presence.  Shortly thereafter they encountered Decedent who was advancing rapidly and menacingly and, while clad only in boxer shorts, was holding his hands in a way that made it impossible for Mejia to tell if he was holding a dangerous weapon.  As Decedent advanced, he made a menacing noise and Mejia reasonably feared for his safety and fired his weapon only when he was prevented from retreating further because Manuele was in the way.

Almost every one of Defendants' proffered undisputed material facts that tend to establish the foregoing narrative are sharply disputed by Plaintiffs.  Plaintiffs submit deposition testimony by Manuele that tends to contradict Defendants allegation that Decedent was advancing quickly on Mejia, or that Manuele was standing behind, and therefore blocking the retreat of, Mejia.  Plaintiffs' proffer of deposition testimony tends to show that Manuele, who was standing next to Mejia, could tell that Decedent was unarmed and that his hands were raised and that there was no reason for Mejia to have reasonably believed that he was in imminent danger of death or injury.  Since the court is considering Defendants' motion, Plaintiff's version of the facts is accepted so long as there is some evidence that tends to establish those facts.  Here, the court concludes that Plaintiffs have made an adequate showing that there remains an issue of material facts as to whether Mejia's use of force was reasonable under all the circumstances.  Summary Judgment as to Mejia is therefore not warranted on the excessive force claim.

20

### 2. Manuele

Defendants contend that Manuele cannot be held liable as to Plaintiffs' claim for excessive use of force because Manuele's conduct did not harm Decedent.  Plaintiffs contend that Manuele used excessive force when he pointed his service weapon at Decedent and that Manuele was an "integral participant" in Mejia's excessive use of force.  Defendants correctly note that "pointing a loaded gun at a suspect, employing the threat of force, is use of a high level of force."  Espinosa v. City & County of San Francisco, 598 F.3d 528, 537-538 (9th Cir. 2010".  Thus, use of unreasonable force may be found whether or not there is an actual discharge of a weapon causing harm.  Again, because the motion currently under consideration is Defendants', the court must construe the hotly disputed material facts in favor of the non-moving party.  At the very minimum, Plaintiffs' version of the facts, believed by a jury, could support a finding that the officers who encountered Decedent observed that he was not armed, was not behaving in a hostile or threatening manner and was clad only in his underwear.  By the same token, the court certainly cannot rule out the possibility that a jury would reject Defendants' contention that it was reasonable for Manuele and Mejia to believe that Decedent was just another PCP ingesting burglar breaking into someone's house in his underpants.

Given the facts currently in contention in this case, the court has no basis to find that there remains no issue of material fact whether Manuele *or* Mejia conducted themselves reasonably when they confronted Decedent with loaded weapons.  Summary judgment is therefore not warranted as to either Mejia or Manuele on the issue of excessive use of force in violation of Decedent's Fourth Amendment Rights.

### C. Conspiracy to Restrict Access To The Court

At paragraph 39(3) of Plaintiffs' SAC, Plaintiffs alleged that Decedent's right to access to the courts was infringed by the falsification of evidence by the reporting officers.  Plaintiff alleges that the falsification "was part of the custom of the code of silence by the

[D]efendants to delay, hinder and obstruct [Decedent's] constitutional right to access to courts and justice." Id. In their motion for summary judgment, Defendants attack the sufficiency of Plaintiffs' SAC by pointing out that Plaintiffs failed to allege what, specifically, was falsified and how such falsification, if any, prevented Plaintiffs' access to the courts. See Doc. # 42 at 38:13-39:20. So far as the court can determine, Plaintiffs have not opposed Defendants' motion for summary judgment on the issue of conspiracy to prevent access to the courts. Where a defendant moves for summary judgment and the plaintiff does not oppose or raise the claim in opposition, the claim is deemed abandoned. Jenkins v. County of Riverside, 398F.3d 1093, 1095 n.4 (9th Cir. 2005). Summary judgment will be granted in favor of Defendants on the issue of conspiracy to deprive Decedent of access to the courts.

## III.  Fourteenth Amendment Claims

Plaintiffs' SAC alleges two claims pursuant to the substantive due process clause of the Fourteenth Amendment. The first claim, improvidently set forth in Plaintiffs' first claim for relief, alleges Mejia and Manuele were deliberately indifferent to Decedent's condition and failed to render aid to ameliorate a condition they had caused. The second claim is a claim by Plaintiff and her son, R.G. for loss of companionship and support of Decedent. The court will consider Defendants' motion for summary judgment as to each claim in turn.

### A.  Failure to Provide Aid

In a prior memorandum opinion and order, the court dismissed Plaintiffs' failure to aid claim against then-defendant County of Kern, which was alleged on the basis of a 20-minute response between the time of the call for medical assistance and the arrival of the ambulance. In Plaintiffs' SAC, the claim for constitutional harm arising from failure to aid is aimed at officers Mejia and Manuele. The SAC alleges that Mejia and Manuele delayed (for an undisclosed period of time) in calling for medical assistance and that neither rendered any aid at the scene.

> Although the [Fourteenth] Amendment does not generally require police officers to provide medical assistance to private citizens, DeShaney v.

[Winnebago County Dept. Soc. Svcs., 489 U.S. 189, 197 (1989)] (holding that the due process clause does not generally confer affirmative rights to governmental aid, even where such aid may be necessary to secure life), when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim.  See L.W. v. Grubbs, 974 F.2d 119 (9th Cir. 1992) [. . .] (concluding a valid section 1983 claim existed against a supervisor at a state facility who placed plaintiff in danger by assigning her to work with an inmate sex offender who had a history of violent assaults on women; he subsequently raped and kidnaped her); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989) [. . .] (concluding that a valid section 1983 claim existed against a state police officer who caused a woman to be stranded in a high-crime area at night where she was subsequently raped).

Penilla v. City of Huntington Park, 115 F.3d 707, 709 (9th Cir. 1997).

"Deliberate indifference is 'a stringent standard of fault; requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' [Citation.]" Id. (quoting Bryan Cnty. Brown, 520 U.S. 397, 410 (1997).  Pursuant to L.W. v. Grubbs, 92 F.3d 894 (9th Cir 1996).

We define the contours of deliberate indifference in [L.W. v. Grubbs, 92 F.3d 894, 898-900 (9th Cir. 1996)].  Under Grubbs, the standard we apply is even higher than gross negligence – deliberate indifference requires a culpable mental state.  Id.  The state actor must "recognize[ ] [an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff." Id. at 899 (internal quotation omitted).  In other words, the defendant "knows that something is going to happen but ignores the risk and exposes [the plaintiff] to it." Id. at 900.  The deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state. [Citation.]

Patel v. Kent School Dist., 648 F.3d 965, 974 (9th Cir. 2011).

Plaintiffs' primary contention is that Mejia and Manuele acted with deliberate indifference when they failed to render *any* aid themselves prior to the arrival of paramedics.  In addition, there is an inference, if not outright allegation, that there was an unwarranted delay between the time Decedent was shot and the time Manuele radioed for a medical response unit.  The court presumes the delay in requesting an ambulance corresponds to the time Mejia and Manuele spent "clearing" the remainder of Decedent's apartment area.

There is no question that the shooting of Decedent by Mejia placed Decedent in a perilous situation.  Whether the officers' conduct can be said to amount to deliberate

23

indifference depends on whether either the delay (if any) in radioing for an ambulance *or* the non-performance of first aid by the officers can be said to amount to a conscious disregard of Decedent's condition.  With regard to the delay, if any, in making the call for ambulance assistance, Defendants allege, and Plaintiffs do not dispute, that Mejia and Manuele proceeded to examine the rest of the apartment area for intruders because they held the subjective belief they could encounter another, potentially dangerous person lurking elsewhere in the apartment.  Whether or not this belief was reasonable, there is no doubt that any delay in making the radio request for ambulance assistance was due to the perceived need to complete the search, not because of a conscious neglect of Decedent and his condition.

With regard to the failure to provide first aid during the time between the radio request for medical assistance and the time the ambulance arrived, the court regards the failure to provide first aid as the risk to which Decedent was exposed.  From that point of view, deliberate indifference requires a showing that Mejia and Manuele *knew* that by not performing any hands-on first aid, they were subjecting Decedent to a substantially greater risk that if they had applied first aid.  Plaintiffs have alleged no facts that would allow the court to make that presumption.  Pursuant to <u>Panilla</u> and other cases that illustrate deliberate indifference, the court must have some basis, whether it be common experience or a demonstration of what the officers actually knew, to make the determination that it was clear under the circumstances that a reasonable officer would have perceived a substantially greater risk of harm arising from the non-performance of the first aid measures that Plaintiffs suggest should have been taken.  The court cannot make this determination.  It is not at all clear to the court that the officers knew or should have known that their failure to do anything to or for Decedent would substantially increasing the risk to decedent.  What steps should be taken in the event of a bullet wound to the chest is not self-evident.  In the absence of a showing that there is a piece of knowledge that would be possessed by any reasonable police officer indicating that some particular first aid should be rendered, the court cannot find that the

failure to provide hands-on first aid is evidence of deliberate indifference.

Defendants' motion for summary judgment as to Plaintiffs' Fourteenth Amendment claim for deliberate indifference will therefore be granted.

### B.  Loss of Companionship and Support

Plaintiffs Manuela Morales and R.A.M each allege a separate claim under the substantive due process clause against Mejia and Manuele for the loss of companionship and support of their husband and father, respectively.   Somewhat strangely, Defendants' motion for summary judgment as to Plaintiffs' loss of companionship claims only addresses R.A.M.'s claim and Defendants' reply memorandum only gives a very cursory argument that Manuela Morales is not entitled to compensation under the Fourteenth Amendment because she had limited contact with Decedent and because Defendants caused no constitutional harm to Decedent.  The court presumes it is Defendants' intent to oppose both claims on the grounds of a lack of a close relationship between the Plaintiffs and Decedent.

There is no actual dispute between the parties as to the legal standard for determining whether there is a violation of Fourteenth Amendment substantive due process rights.  There is a constitutional interest in familial companionship and society that extends to children to the companionship and support of their parents just as the same constitutional interest exists in the relationship of parents to their children.  Smith v. City of Fontana, 818 F.2d 1411, 1488 (9th Cir. 1983).  The same principles establish a constitutional basis for the right of spouses to the support and companionship of each other.  See Cosby v. City of Oakland, 1997 WL 703776 (N.D. Cal. 1997) at *5 n.6.  A claim for loss of companionship implicates substantive due process rights under the Fourteenth Amendment.  See Smith, 818 F.2d at 1419-1420 (because the state has no legitimate interest in interfering with liberty interests arising from familial ties by using excessive force, the protections offered by the substantive due process clause are appropriate).  In the context of claims for loss of companionship, such claims are judged under the standards of "deliberate indifference or reckless disregard."  See Smoot v. City of

Placentia, 950 F.Supp. 282, 283-284 (C.D. Cal. 1997) (citing Lewis v. Sacramento County, 98 F.3d 434, 441 (9th Cir. 1996).

The facts alleged by Plaintiffs establish that, while Plaintiffs reside in Mexico and Decedent resided in Delano, California, the purpose of Decedent's residence in California was to earn and save money for the purpose of buying property in Mexico.  Plaintiffs allege that Decedent sent money on a regular basis to Plaintiffs.  Defendants allege that R.A.M. has had little on-going relationship with Decedent and that he cannot therefore maintain a Fourteenth Amendment claim against Defendants.  At the same time, Defendants admit that R.A.M. had at least one instance of direct contact with his father.

While Defendants' motion for summary judgment on the issue of Plaintiffs' loss of companionship and support claim is mostly barren of  facts that would be relevant to the court's determination, Plaintiffs' claim for summary adjudication is relatively rich in facts that are irrelevant to that motion but are quite relevant to the relationship that existed between Decedent and his wife and child.  Significantly, Defendants did not dispute the truth of the facts relating to the existing relationship between Decedent and his wife and child, only their relevance.  When the court considers those facts in the context of Defendants' motion for summary judgment on Plaintiffs' Fourteenth Amendment claims for loss of support and companionship, the court has no difficulty in determining that Defendants' contention that the claims of Decedent's wife and child must fail because of the lack of physical closeness is without merit.  Based on Plaintiffs' alleged facts, the court finds that Decedent and his family, while physically separated, had a relationship based on commitment, sacrifice, effort toward a commonly held goal and a vision of an improved lot in life.  The court cannot say that, as a matter of law, that relationship was less worthy of Fourteenth Amendment protection than a more conventional one.

Defendants also contend that they are entitled to summary judgment because Plaintiffs cannot show that the actions of Mejia and Manuele evince deliberate indifference or reckless

disregard of the rights of Decedent's wife and child.  The court disagrees.  Again, taking the facts that are currently sharply disputed in the light most favorable to Plaintiffs, they tend to show that Mejia and Manuele knew or should have known that they were entering a private and separate space where Decedent had a constitutionally-guaranteed privacy interest.  After unlawfully entering the Decedent's apartment space, Mejia and Manuele encountered a plainly unarmed person who was not advancing on or threatening the officers.  Under this set of facts, which may or may not be proven at trial, the court has no problem finding that a jury could find the necessary state of mind with regard to Majia and Manuele.  The court concludes that Defendants are not entitled to summary judgment as to Plaintiffs' claims for loss of companionship and support under the Fourteenth Amendment.

## IV. Supervisor Liability – City of Delano and DeRosia

Plaintiffs' SAC alleges a claim against Defendant City of Delano for failure to properly select and train officers and failure to properly investigate instances of officer involved shootings and failure to take appropriate remedial action subsequent to officer involved shootings.  A municipal entity is liable only for the actions of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978).  "To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act."  Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir.2000) (quoting McMillian, 520 U.S. at 785, 117 S.Ct. 1734).  "A municipality is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. [Citations.]" Sepatis v. City and County of San Francisco, 217 F.Supp.2d  992, 1005 (N.D. Cal. 2002). "Rather, to impose municipal liability for a violation of constitutional rights, a plaintiff must show: (1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a

policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation." Id. (citing Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

Case authority in this circuit has broadened the meaning of "policy" such that a plaintiff may establish municipal liability "by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' or (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' [Citation]" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-985 (9th Cir. 2002). Further, a policy "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (quoting Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992). "A plaintiff need not show that a municipality affirmatively encouraged officers to take the lives of citizens; rather a municipality may be liable under Section 1983 for constitutional injuries inflicted by its officers if it fails to adequately guard against such injuries through training and supervision." Perrin v. Gentner, 177 F.Supp.2d 1115, 1123 (D. Nev. 2001). "A municipality will be held to a 'constructive notice' standard for failing to take corrective measures where information about officer misconduct plainly indicates a need for such measures." Id.

Plaintiffs' opposition to Defendant Monell claim relies primarily on the Declaration of Roger Clark, Doc. # 61. The Clark Declaration makes two allegations that are relevant to this inquiry. First, Clark alleges that Mejia, a Level II reserve officer, had not received critical POST training, including "'shoot-don't shoot' training reinforced by role play and sumulation required in the POST basic curriculum." Clark Dec. at ¶ f. Clark alleges that this lack of

training directly resulted in the shooting of Decedent, which was completely unwarranted and avoidable with the use of proper procedures. Clark states that Mejia was deployed into situations such as the one under consideration without any testing "to make sure he could competently be part of an officer response to a possible residential burglary in progress." Id.

The second area where Clark's Declaration sets forth opinion that may implicate City of Delano has to do with the response of Police Department Officials to the Internal Affairs investigation of the shooting and the failure of that investigation to note any of what Clark opines are glaring and obvious problems with the investigation itself and with the conclusions drawn by the investigators. Clark opines that the Internal Affairs investigation outcome "is reflective of a custom and practice within the Delano Police Department to look the other way rather than hold to their written and publically expressed policies and procedures.

With regard to Clark's opinion that the Internal Affairs investigation of Mejia's shooting of Decedent was inadequately conducted and that the acceptance of the investigation's findings constitutes ratification of unconstitutional conduct, the court finds that these alleged facts are not sufficient to establish a claim for entity or supervisor liability. Plaintiffs rely heavily on Larez v. City of Los Angeles, for the proposition that failure to adequately investigate an instance of unconstitutional force can indicate the supervisor's ratification and the existence of a policy reflecting deliberate indifference of citizen's constitutional rights. District courts in California have, however, declined to apply Larez where there is no evidence of a history of similarly whitewashed investigations. For example, this court, in Jones v. County of Sacramento, 2010 WL 2843409 (E.D. Cal. 2010), noted the fact that in Larez and in Watkins v. City of Oakland, 145 F.3d 1087, 1093-94 (9th Cir. 1997), a case that followed Larez, the factual predicates of a finding of possible supervisor liability based on failure to adequately investigate involved the existence of evidence tending to indicate that the report that was not acted on was preceded by other indications of the type of unconstitutional behavior complained of. Jones, 2010 WL 2843409 at *6; see also, Phillips v.

City of Fairfield, 406 F.Supp.2d 1101, 1116 (E.D. Cal. 2005) (finding Larez not applicable where there is no evidence of prior disregard of officer misconduct).  The court finds that there is not enough evidence of past disregard of misconduct of officer involved shootings for the court to find that Mejia's shooting was the result of a policy established by the disregard of police officials who had prior notice of patterns of use of unlawful force.

Plaintiffs also content that City of Delano and DeRosia are liable because Mejia, a reserve officer, was inadequately trained to handle the situation into which he was deployed.  Plaintiffs allege Mejia was deployed pursuant to a policy established by a city official (Police Chief DeRosia) that resulted in Decedent's constitutional injury.  There is no allegation that DeRosia is not an official with policy-making authority within the Police Department.  For purposes of this analysis, the court assumes that Plaintiffs' version of the facts are true, in which case a constitutional violation of Decedents' rights is established.  Plaintiffs' allege that Mejia did not receive the training normally required of an officer responding to a situation such as the one at bar because of his status as Reserve Officer II.  Essentially all of the undisputed material facts alleged by Defendants regarding Mejia's level of training and experience are disputed by Plaintiffs.   Resolving all disputed factual issues in favor of the non-moving party, the court finds there is evidence from which a jury could conclude that Mejia was not sufficiently qualified to handle the situation into which he had been deployed.

If, based on Plaintiffs' version of the facts, a trier of fact were to find that Mejia was inadequately trained with regard to the use of lethal force, then the constitutional harm suffered by Decedent can be understood to flow from: (1) the decision of Mejia and Manuele to enter the apartment, and (2) the position of Mejia as the lead officer or his positioning so as to be the first to confront Decedent.  Plaintiffs' claim for supervisory and entity liability on the issue of training and supervision therefore turns on the question of whether Mejia entry into the apartment and his placement in a front position as the officers entered was within established departmental policy.  At present, the court lacks information necessary to make

this determination.  Given the level of dispute as to the underlying facts, it is unlikely that anything short of trial would be sufficient to resolve the underlying factual situation.  The court will therefore deny Defendants' motion for summary judgment on the issue of entity and supervisory liability without prejudice and subject to renewal at any appropriate point up to and through trial.

## V.  Qualified Immunity: Excessive Force Claims

The court has previously discussed the standard for determining claims of qualified immunity and has found that an issue of qualified immunity remains as to Defendants' claim for qualified immunity with respect to the unwarranted entry into the apartment.  With regard to Plaintiffs' claims for violation of Fourteenth Amendment rights against use of excessive force, the court finds qualified immunity is plainly not applicable.  The contours of the Fourth Amendment right against excessive force were thoroughly defined as of the date of the conduct at issue here.  If the court's accepts Plaintiffs' version of the disputed facts as true, as it must, then there is no doubt that no reasonable officer in Mejia's situation could have believed that Decedent posed an imminent threat of death or bodily harm to either officer or to the public.  Therefore, a reasonable officer under those facts could not have believed that the use of lethal force would not be unconstitutional.

The court concludes Mejia and Manuele are not entitled to qualified immunity as to Plaintiff's claims for unconstitutional use of force.

## VI.  State Law Claims

### A.  Battery

Plaintiffs' sixth and seventh claims for relief allege battery against Defendant Mejia and negligence against both Manuele and Mejia.  Defendants contend that the battery claim against Mejia must be determined by the same reasonableness standard that is used to determine the excessive force claim under the Fourth Amendment.  See Doc. # 42 at 52:15:18 (citing Edison v. Ahaheim, 63 Cal.App.4th 1269, 1274-1275 (1998)).  Defendants contend

that "once it is determined that an officer's conduct did not violate Plaintiffs' federal rights, their corresponding claims of negligence and battery must be dismissed. Simi Valley . Superior Court, (2003) 111 Cal.App.4th 1077, 1084)." Id. at 19-22.  Presuming Defendants contentions to accurately reflect applicable law, the court must deny Defendants' motion for summary judgment as to Plaintiffs' battery claim because it cannot dismiss the corresponding federal claim under the Fourth Amendment.

### B.  Negligence

As this court has previously noted, negligence is measured by the same standard as battery and excessive use of force under the Fourteenth Amendment.  See Abston v. City of Merced, 2011 WL 2118517 (E.D. Cal. 2011) at *16 ("Plaintiffs' claim for negligence-wrongful death flows from the same facts as the alleged Fourth Amendment violation for excessive force and are measured by the same reasonableness standard.").  To this, Defendants add the contention that negligence cannot be found from the manner in which the officers deployed.  See Doc. # 42 at 53:1-5 (citing Brown v. Ransweiler, 171 Cal.App.4th 516, 535 (2009).  Defendants' motion for summary judgment on Plaintiffs' claim for negligence must fail for the same reason as the motion for summary judgement on the claims for excessive force and battery must fail; the facts, taken in the light most favorable to Plaintiffs are sufficient to support these claims.  That a claim for negligence cannot be based on the manner in which the officer or the force was deployed is not determinative of the validity of Plaintiffs' claim.  Seen in the factual light most favorable to Plaintiffs, no amount of force would have been reasonable against a person known to be unarmed and not threatening and lawfully on the premises.

### C.  Wrongful Death

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." Quiroz v. Seventh Ave. Center, 140 Cal.App.4th 1256, 1263 (2006);

32

Wright v. City of Los Angeles, 219 Cal.App.3d 318, 344, (1990). The California Supreme Court has held that "an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." Munoz v. Olin, 24 Cal.3d 629, 634 (1979) (citing Grudt v. City of Los Angeles, 2 Cal.3d 575, 587 (1970)). Thus, the tort claims for wrongful death and negligence are connected for purposes of the present motion for summary judgment in that the ability of either to withstand Defendants' summary judgment motion is dependent on Plaintiffs' ability to show there remains an issue of material fact as to whether Mejia's shooting of Decedent was negligent.

The court concludes that Defendants are not entitled to summary judgment as to any of Plaintiffs' state law claims.

**VII.  Pain and Suffering**

Subsection 377.34 of the California Code of Civil Procedure prohibits recovery for pain and suffering on behalf a decedent by the personal representative or successor in interests on the decedent's cause of action.  As Plaintiffs note, district courts in California have split on the issue of whether an section 377.34 is a bar to the recovery for pain and suffering or hedonic damages in California in actions pursuant to section 1983.  In the Eastern District, courts have, for the most part, followed the decision in Venerable v. City of Sacramento, 185 F.Supp.2d 1128, 1133 (E.D. Cal. 2002) holding that California's prohibition of recovery for hedonic damages under section 377.34 is not unconstitutional and does not conflict with the purpose of 42 U.S.C. section 1983.  Other district courts in the Northern and Central Districts have concluded that California's limitations on recovery for pain and suffering are inconsistent with the purposes of section 1983 and have declined to apply California's statutory limitation in 1983 cases.  See, e.g. Williams v. County of Oakland, 915 F.Supp. 1074 (N.D. Cal. 1996); Garcia v. Whitehead, 961 F.Supp. 230, 233 (C.D. Cal. 1997) ("California's survivorship statute is inconsistent with the purposes of section 1983 because it excludes damages for pain and suffering of the decedent.").  While the trend in the Eastern District to

exclude damages for pain and suffering in section 1983 cases has been fairly consistent since the decision in <u>Venerable</u>, <u>see</u> <u>Contreras v. County of Glen</u>, 725 F.Supp.2d 1151, 1155-1156 (E.D. Cal. 2010) some courts have followed only reluctantly.  <u>See</u> <u>e.g.</u> <u>Duenez v. City of Manteca</u>, 2011 WL 5118912 (E.D. Cal. 2011) at *9.

This court will follow the line of cases that predominate in this district by granting summary judgment on Plaintiffs' claim for pain and suffering for two reasons.  First, like the court in <u>Duenez</u>, this court is concerned that parties that come before District courts in this district should be treated similarly and second, this court feels the instant case presents a rather weak set of facts to support a departure from district practice.  In this action, there is little evidence to support a claim for significant pain or suffering and there is, at the same time, a fairly rich basis for recovery of damages on other grounds.

The court will grant Defendants' motion for summary judgment as to Plaintiffs' claims for compensation for Decedents' pain and suffering.


THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that:

1.   Plaintiffs' motion for summary judgment as to Plaintiffs' claim of violation of Decedent's Fourth Amendment right against unlawful search is hereby STAYED. Each party shall submit additional briefing setting forth additional alleged facts and legal argument on the issue in light of the foregoing discussion.  Such additional briefing shall be filed and served not later than seven (7) days from the date of service of this order.  Defendants' motion for summary judgment on the issue of unlawful search is correspondingly STAYED.

2.   Defendants' motion for summary judgment as to Mejia and Manuele on Decedent's claims under the Fourth Amendment, including claims for unlawful use of force, is hereby DENIED.

3.   Defendants' motion for summary judgment on Plaintiffs' claim of conspiracy to deny

1    access to the courts is hereby GRANTED.

2    4.    Defendants' motion for summary judgment on Decedent's claim under the Fourteenth

3          Amendment for failure to provide aid is hereby GRANTED.

4    5.    Defendants' motion for summary judgment on Plaintiffs' claim under the Fourteenth

5          Amendment for loss of support and companionship is hereby DENIED.

6    6.    Defendants' motion for summary judgment on Decedent's claims against DeRosia and

7          the City of Delano on the theory of failure to properly supervise, select or train is

8          hereby DENIED WITHOUT PREJUDICE.  The motion shall be subject to renewal at

9          any time deemed proper by Defendants.

10   7.    Defendants' motion for summary judgment on Decedent's claims under California

11         state law for battery, wrongful death and negligence are each hereby DENIED.

12   8.    Defendants' motion for summary judgment on Decedent's claims for pain and

13         suffering is hereby GRANTED.

14   IT IS SO ORDERED.

15   Dated:   February 14, 2012

16                                          CHIEF UNITED STATES DISTRICT JUDGE

35