IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUELA CANCINO CONTRERAS MORALES and R.A.M., a minor,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF DELANO; MARK P. DEROSIA; JOSE MEJIA; SHAUN MANUELE; and DOES 1 through 50, inclusive,<br><br>Defendants. | 1:10-CV-1203 AWI JLT<br><br>MEMORANDUM OPINION AND ORDER FOLLOWING ADDITIONAL BRIEFING ON PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION ON THE ISSUE OF FOURTH AMENDMENT VIOLATION ARISING FROM UNLAWFUL ENTRY<br><br>Doc. # 46 |

In this civil rights action for damages, the court previously issued a memorandum opinion and order on February 14, 2012, on the Parties' cross-motions for summary judgment and summary adjudication (hereinafter, the "February 14 Order"). Doc. # 94. In the February 14 Order the court concluded that it's determination of Plaintiffs' motion for summary judgment on the issue of whether the Fourth Amendment rights of decedent Ruben Morales ("Decedent") against unreasonable search required further briefing by the parties on both the law and facts pertaining to the unwarranted entry of Decedent's rented living space (the "Apartment") by defendants Manuele and Mejia. In particular, the court requested further briefing of facts and law regarding the issue of whether the 9-1-1 call by Decedent's landlord, Nunez, to the Delano Police Department granted actual or implied consent for the subsequent search. In a subsequent scheduling order following status conference, the court ordered the parties to submit simultaneous briefs on or before March 2, 2012, and simultaneous

responsive briefs by March 9, 2012.  After further consideration of the parties' additional briefing and all associated additional facts and argument, the court will deny Plaintiffs' motion for summary adjudication without prejudice.

## ADDITIONAL OR SUPPLEMENTARY UNDISPUTED MATERIAL FACTS

The court's February 14 Order summarized the undisputed material facts pertaining to the entry of Manuele and Mejia into the Apartment.  Defendants' supplemental brief draws the attention of the court to three pieces of information that were omitted from, or misstated in, the court's prior description of events.  First, Defendants point out that the English translation of the transcript of the 9-1-1 call shows that the light that was described as "on" in Nunez's residence was "flickering" or perhaps going on and off.  Second, Defendants point out that the Declaration of Manuele, set forth in Exhibit "B of Doc. # 53, states that officer Mejia announced "Delano Police, or words to that effect" upon entry into the Apartment area.  Third, the Manuele Declaration, as well as other evidence submitted shows that Manuele and Mejia knew prior to their entry into Decedent's Apartment that the other officers had commenced a search of the interior of Nunez's residence but did not know that the search had been concluded with negative results.  To this, the court would add parenthetically that neither Manuele or Mejia knew when they entered the Apartment that the space occupied by the Apartment was physically cut off from the main part of Nunez's residence.

While Defendants' proffer of additional undisputed material facts leaves an ambiguity as to whether Meja announced "Delano Police" before or after the actual entry into the Apartment, the court is required to construe all ambiguities in the light most favorable to the non-moving party – Defendants, in this case.  Thus, the court considers Plaintiffs' motion for summary adjudication on the issue of unlawful entry presuming, for the sake of this decision, that Mejia announced the presence of the officers through the opened or partially opened door to the Apartment.  Likewise, the court presumes for purposes of this discussion that Nunez reported in her 9-1-1 call that she saw a light "flickering" inside her residence.  The court has

reviewed the factual context it presented in the February 14 Order, Exhibit "R" accompanying the Declaration of Kimberly Wah. Doc. # 100, and the Deposition of Manuele. Exh. "B" to Doc. # 52.  With these factual representations in mind, the court here restates the factual background pertaining to Plaintiffs' motion for summary adjudication.  The parts of the factual context that have been changed or modified based on Defendants' representations are [bracketed].

> Accepting Defendants' representation of the facts as true, officers Mejia and Manuele arrived at the scene at about the same time as the other officers and were told to "cover the back" knowing only that there had been a call reporting that the front door was found to be ajar/open when it should not have been, and that there was a [flickering] light on inside when there should not have been.  Nothing else.  Officers Mejia and Manuele had no knowledge of whether anyone had tried to make contact with anyone inside the apartment or Mrs. Nunez's (hereinafter, the "residence") and did not attempt to do so themselves.  See Plaintiff's UMF # 46 (none of the responding officers knocked on the apartment front door or windows).  As noted above, Mejia and Manuele had no knowledge of any conversation between Mrs. Nunez and the other officers. [While Manuele and Mejia knew the other Officers had commenced a]  search of the Nunez residence, they did not know] [. . .]  the other officers had concluded their search finding nothing amiss.] [. . . .]  Mejia and Manuele entered the space rented by Decedent through an unlocked door without knocking [but upon announcing "Delano Police" or words to that effect] before or as they entered the unlocked door to the Apartment.
>
> The court notes that Defendants invite the court to speculate that Mejia and Manuele were caught up in rapidly evolving facts requiring split-second decision making.  There are absolutely no facts to indicate this was the case.  At most, the facts permit the conclusion that Mejia and Manuele were deployed to "cover the back," which they did, and where nothing much appears to have happened.  There were no fleeing suspects, no shots fired, no voices indicating urgency, and no radio transmissions indicating an escalating situation.  Neither party has developed the facts surrounding the entry with a great deal of precision so the court is left with the understanding that Mejia and Manuele "covered the back" for some period of time not knowing what the other officers were doing.  At some point, and for no stated reason, Mejia and Manuele decided to enter an open door without knocking [. . .] and without any knowledge where the door would lead [and without communicating their intentions to anyone else].
>
> Defendants allege, and the court accepts as true for purposes of this discussion, that Mejia and Manuele did not know if, or when, the other officers [completed their] search of the residence from the front; did not know that the search of the residence concluded without finding anything amiss; and did not know that Mrs. Nunez had communicated to officers Felix and Ward that the area comprising the garage had been converted into an apartment and was occupied by Decedent.  The court also accepts as true that sometime after the

3

> radio broadcast of the "code 4" message, Mejia and Manuele entered without knocking but with announcing through a partially-opened door in the back yard that they did not know entered into the space that was being rented by Decedent. There is, of course, no dispute that Mejia and Manuele entered without a warrant.

Doc. # 94 at 7:26 - 9:8.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

4

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

In responding to the court's order for further briefing of facts and law Defendants renew the contentions made in their original opposition to Plaintiffs' motion for summary judgment; that Manuele and Mejia's entry in to the Apartment was justified by the existence of exigent or emergency circumstances, that it was carried out by actual or implied consent, or that Mejia and Manuele are entitled to qualified immunity. The court will examine each contention in turn in the light of the parties' additional briefings.

**I. Exigent Circumstances**

As an initial matter, Defendants invite the court to revisit its decision with regard to whether the entry into the Apartment was justified under the "emergency" or "exigent circumstances" exceptions to the Fourth Amendment warrant requirement. The court, in its February 14 Order, rejected Defendants' appeal to both exceptions and does so here with the following explanations. Defendants primary contention is that the court failed to lend appropriate weight to facts tending to indicate the emergent or exigent nature of the circumstances at the time. Basically, there is nothing to add in this regard except that, in addition to the front door being open when it should not have been, there was a flickering light from the inside when the residence should have been vacant. This is the sum total of what

6

Manuele and Mejia knew when they deployed to the back yard.

The court observed in its February 14 Order that Manuele and Mejia were deployed to the back yard to "cover the rear." Both the Manuele Delaration, Doc. # 53-2, and the declaration of Joe Calanan, Defendants' expert witness, characterize the deployment to "cover the back" as a tactical move to essentially seal off other entrances to the residence from unlawful entry or exit while the premises are being searched. See Calanan Declaration, Doc. 100-3 at 10 ("Officers Manuele and Mejia were deployed to rear yard containment). Manuele's declaration establishes that neither he nor Mejia talked to any of the other officers before deploying to the back yard, they did not know whether anyone had spoken to Nunez or what was said, and did not know that Nunez had told one of the other officers, Alberto Felix, that she had a renter. See Felix Deposition, Doc. # 104-4 at 4:4-7 (Nunez informed Felix that she had a renter).

Defendants' argument in favor of a finding of exigent circumstances centers on two contentions. First, Defendants opine that the court prior analysis "seems to ignore the fact that Officers Mejia and Manuele were involved in a 'tense, uncertain and rapidly evolving" situation. Graham v. Connor, 490 386, 397 (1989)." Doc. # 100 at 1:23-24. The court makes two observations concerning 'tense, uncertain and rapidly evolving." First, assuming the situation actually were "tense, uncertain and rapidly evolving," those facts do not establish exigency, they are reasons for the court to be careful not to apply facts made available in hindsight to the analysis of exigency. Second, the court sees no reason, based on facts as now understood, to change its previously-expressed opinion that Mejia and Manuele were not confronted with a situation that was rapidly-evolving at the time they chose to enter the Apartment. As the court observed in its February 14 Order, Mejia and Manuele were deployed to "cover the back," where they found no sign of criminal activity. After inspecting the shed and the surrounding yard, they observed nothing suspicious, saw no fleeing suspects, heard no shouts or shots and heard the "Code 4" radio dispatch by the officers who (had

7

presumably) searched Nunez's residence without result.  Thereafter, there is nothing alleged by either Mejia or Manuele to indicate that anything changed prior to their entry into the Apartment.

Exigency, if it is to be found at all, must exist at the time an officer makes an unwarranted entrance into the dwelling.  See Fisher v. City of San Jose, 509 F.3d 952, 959 (9th Cir. 2007) ("the critical time for determining whether any exigency exists is the moment the officer makes a warrantless *entry*").  "'The government bears the burden of showing the existence of exigent circumstances by particularized evidence' and this burden is not satisfied by mere speculation that the exigency exists. [Citation.]" Bailey v. Newland, 263 F.3d 1022, 1033 (9 Cir. 2001) (quoting United States v. Tarazon, 989 F.2d 1045, 1049 (9th cir. 1993)).  "[E]xigent circumstances are present when a reasonable person would believe that entry was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." Bailey, 263 F.3d at 1022 (internal alterations and quotation marks omitted).

The court's February 14 Order examined Murdock v. Stout, 54 F.3d 1437 (9th Cir 1995), and concluded that the facts of that case described the portion of the boundary between what is and is not an exigent circumstance in the context of unwarranted entry into a dwelling on suspicion of burglary.  Defendants ask the court to reverse its prior conclusion that the facts of this case lie on the side of the line indicating a lack of exigency by contending the court had not properly taken into consideration the facts that Nunez, rather than a neighbor, had reported the fact the door was ajar, there was a flickering light inside and the residence should have been uninhabited at that time.  Defendants further contend the court's February 14 Order improperly posited that neither Mejia or Manuele announced their presence.  While the court appreciates Defendants' diligence in correcting the facts, the court remains of the opinion that exigent circumstances did not exist so far as Mejia and Manuele.

The court's reasoning is based on the fact that Mejia and Manuele knew prior to the time they entered the Apartment that the other officers had commenced the search of the residence, but did not know if the officers had concluded their search. See Doc. # 53-2 at ¶ 10. Officers Mejia and Manuele also knew that there had been no radio or vocal calls for assistance inside the house, no gunshots and no sounds of commotion. As far as the aforementioned judicially established criteria for the determination of exigent circumstances are concerned, the circumstance objectively faced by Mejia and Manuele fulfill none of those criteria. Even presuming that a report of potential burglary is, in some abstract way, sufficient to establish exigent circumstances – a proposition the court does not suggest is true – the needs presented by that "exigency" were satisfied as soon as the officers in the front entered Nunez's residence through the front door. As far as Mejia and Manuele were concerned, the need to prevent suspect escape was best served by their presence in the back yard. So far as Mejia and Manuele were aware, the whole of the house could be searched from the inside where other officers were already searching. From that, it follows that officer or citizen safety would not have been enhanced by their entry into the house; there was no threat of destruction of relevant evidence; and there is no suggestion of any other factor that would frustrated the legitimate purposes of law enforcement. Given the need to assess the presence or absence of exigent circumstances at the moment of officer entrance into a dwelling, the court must conclude, as before, that Manuele and Mejia were not facing exigent circumstances when they entered what ended up being Decedent's Apartment.

**II.  Consent**

The court's February 14 Order observed that the issue of consent is closer than the issue of exigent circumstances. After further briefing by the parties, this remains the case. As the court previously observed, neither Mejia nor Manuele requested or received express consent to search the interior of what they believed to be Nunez's residence. The first question is whether the facts now recognized as a result of further briefing by the parties

9

changes the court's prior analysis.  The only fact of relevance now known that was not formerly appreciated by the court is that Manuele and Mejia knew prior to the time they entered the Apartment that the other officers had entered the main residence, presumably through the front door.  As explained above, the knowledge that the other officers entered through the front door and either were conducting or had conducted a search of the residence without event is sufficient to negate any claim of exigency or emergency as far as Mejia and Manuele were concerned.  The question that arises as a result of Mejia's and Manuele's knowledge of the search activities of the other officers is whether that knowledge amounted to permission, whether express or implied, to enter Decedent's Apartment.

The court's inquiry is guided by the general rule that "exceptions to the warrant requirement are 'few in number and carefully delineated.' [Citation.]" Welsh v. Wisconsin, 466 U.S. 740, 749 (1984) (quoting United States v. United States Dist. Court, 407 U.S. 297, 318 (1972)).  Where authority to enter is based on consent, the existence of consent is not lightly inferred.  United States v. Patacchia, 602 F.2d 218, 219 (9th Cir. 1979).  The government "always bears the burden of proof to establish the existence of effective consent." United States v. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984).  While it is ultimately the government's burden to show that a reasonable officer in Mejia's or Manuele's position would have reasonably understood that they had permission to enter, it must be kept in mind that what is under consideration is Plaintiffs' motion for summary adjudication.  In this context, Plaintiffs have the burden to show that, under the set of facts alleged by Defendants and viewed in the light most favorable to them, that no finder of fact could conclude that Mejia and Manuele had consent to enter.

The court's request for further briefing centered on the somewhat abstract question of whether a 9-1-1 call by a home owner to police to report a potential break-in provided implied consent for warrantless entry of police officers.  In view of the additional briefing by the parties, the court concludes that, in this instance, both facts and law answer this question in the

negative. While neither party or the court have found case authority squarely on point, the court acknowledges that Thompson v. Louisiana, 469 U.S. 17 (1984) does provide authority for the somewhat limited proposition that, while a 9-1-1 call may provide a compelling basis to presume an emergent or exigent circumstance, such a call does not provide *carte blanch* for police intrusion into private spaces. See id. at 22 (9-1-1 call for medical assistance provides evidence for emergency but does not provide basis for search of private spaces). However, the court finds that other facts alleged or brought to the court's attention relieve the court of the need for excursion into uncharted legal territory.

The court begins by noting that Nunez was physically present when the police arrived and was available, through an interpreting officer, to provide both information and consent for the search of her residence. As owner of the residence and as the originator of the 9-1-1 call, Nunez had authority to prohibit the search of her residence had she so desired. It follows that the presence of the police officers in her residence reliably signifies a grant of permission for their entry. The court concludes that the 9-1-1 call is immaterial to the issue of whether the Officers who entered Nunez's residence from the front did so with her permission because the facts permit the clear inference that permission was provided at the scene by Nunez.

The question that then remains is whether Mejia or Manuele could reasonably have presumed consent to conduct a search based on their knowledge that the other officers had conducted, or were in the process of conducting a search prior to the time they entered Decedent's Apartment. To review the pertinent facts, the circumstances of the Mejia and Manuele's entry were that: (1) Manuele and Mejia, (the "Officers") were dispatched to "cover the back" without either express permission or express orders to enter the house; (2) the Officers covered and searched the back yard not knowing that the residence was divided and not knowing that Apartment area and Nunez's residence area were physically divided and that it was not possible to go from one to the other inside the house; (3) the Officers knew before they entered that other officers and possibly Nunez were in the home and that a search had

been or was being conducted; and (4) the Officers entered with guns drawn and at a high state of alert without asking permission or communicating their intent to anyone else.  The court has given both parties opportunity to find persuasive case authority that supports the contention that permission to enter could reasonably have been, or could not reasonably have been, presumed by the Officers under those circumstances.  Similarly, the court has conducted its own search and can find nothing that persuades the court one way or the other.

The court concludes that it cannot find that the entry of the Officers into Decedent's Apartment was unlawful as a matter of law.  It does not matter at this juncture whether the inability to make a ruling as a matter of law is expressed in terms of the substantive claim under the Fourth Amendment or in terms of the entitlement of the Officers to qualified immunity.  Either decision hinges on a showing of what the Officers knew or had reason to know, what police practices can be held to describe the range of "reasonable" in light of testimony of both parties' police practices experts. and the relative credibility the finder of fact decides to accord the factual witnesses of both parties.

**III.  Qualified Immunity**

The court previously expressed its opinion that the question of whether the Officer's entry into Decedent's Apartment area was unlawful is close.  While the court indicated in the previous paragraph that Plaintiffs have not convinced the court they are entitled to judgment as a matter of law on either the substantive unlawful entry claim or on the issue of qualified immunity, the court feels the parties could possibility benefit from some further explanation of the court's reasoning with regard to qualified immunity.

The court has set forth the applicable legal standard for determination of qualified immunity in its February 14 Order and will not repeat that here.  What is important from the court's perspective is that qualified immunity reflects a policy decision to protect from money damages "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 344-345 (1986).  A "law enforcement officer who participates in a

12

search that violates the Fourth Amendment may [not] be held personally liable for money damages if a reasonable officer *could have believed* that the search comported with the Fourth Amendment." Anderson v. Creighton, 483 U.S. 635, 636-637 (1987) (italics added). Where, as is normally the case, qualified immunity is raised by a defendant, the court "must carefully examine the specific factual allegations against each individual defendant as viewed in a light most favorable to the plaintiff." Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000). As the court explained in its February 14 Order, when the facts of this case are examined in a light most favorable to *Plaintiffs* – that is, where it is shown that the Officers knew of Decedent's presence and entered his Apartment anyway – there is no question that qualified immunity does not apply.

However, in trying to demonstrate the *absence* of any issue of material fact as to qualified immunity in a light most favorable to *Defendants*, Plaintiffs are required to clear bar that is substantially higher than that required to show that the Officers entry was unconstitutional. As the Creighton Court pointed out, under a consistently-applied standard for qualified immunity, a search or seizure may be objectively unreasonable and therefore unconstitutional under the Fourth Amendment, but qualified immunity is only lost where the officers' actions were "unreasonably unreasonable." Creighton, 483 U.S. at 643. While the court has concerns that the failure of the Officers to communicate their intent to enter with guns drawn and in a high state of alert may well have rendered their entry unreasonable, and therefore unconstitutional under the totality of the facts, the court is definitely not convinced that the Officer actions do not lie within the realm of the sort of "well meaning but factually or legally mistaken" conduct that qualified immunity is intended to shield from individual liability to damages.

In Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir. 1993) ("Bagley"), the Ninth Circuit held that "[i]f a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the *case* must proceed to trial." Id. at 873 (italics added). It

is significant to this court that what the Bagley court did *not* hold was that the issue of qualified immunity is to be decided by a jury. Instead, what the Bagley court directed was that where, as here, there is " a genuine issue of underlying fact [that] does exist, [the court] should postpone the qualified immunity determination until the facts have been developed at trial." Id. at 873-874. Under the circumstances at play in this case, the court interprets the decision in Act Up!/Portland to require the submission of all evidence pertaining to the Officers' entry to a jury. The jury is to make its determination whether the entry was reasonable or unreasonable under all the facts. The jury is also to make special findings of fact with regard to what the Officers knew or reasonably should have known at the time of their entry. If the jury finds the Officers' entry was unreasonable, Defendants are to submit the issue of qualified immunity to the court for its determination under the facts as found by the jury.

The foregoing is offered to explain the court's reasoning behind its conclusion that there is no practical difference whether the court denies Plaintiffs' motion for summary adjudication on substantive grounds or on grounds of qualified immunity. In either case, the facts that are essential for the determination of the issue are in dispute and must be determined by a jury. The court further finds that it is not reasonable to submit the issue to the jury in any context other than a determination of all the evidence related to the underlying substantive issue of Fourth Amendment violation. In other words, the court finds it improper to call upon a jury to determine if the officers conduct was "reasonably reasonable," "reasonably unreasonable," or "unreasonably unreasonable." These distinctions are to be drawn by the court upon a finding of relevant facts by the jury.

THEREFORE, for the reasons discussed above, it is hereby ORDERED that Plaintiffs' motion for summary adjudication on the issue of unlawful entry under the Fourth Amendment is DENIED without prejudice. The court also hereby AMENDS its Order of February 14, 2012, by ORDERING that its denial of Defendants' motion for summary judgment on the

issue of qualified immunity on the issue of unlawful entry under the Fourteenth Amendment is without prejudice.

IT IS SO ORDERED.

Dated:     March 22, 2012                                    _____
                                                              CHIEF UNITED STATES DISTRICT JUDGE