**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MANUELA CANCINO CONTRERAS MORALES and R.A.M., a minor,**      ) <br>                ) <br> **Plaintiff**,     ) <br>          ) <br> **v.**      ) <br>          ) <br> **CITY OF DELANO; MARK P. DEROSIA; JOSE MEJIA; SHAUN MANUELE; and DOES 1 through 50, inclusive,**    ) <br>         ) <br> **Defendants**.    ) | **1:10-CV-1203 AWI JLT** <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF STANDING AND MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTY** <br><br> Doc. #'s 104 and 105 |

In this civil rights action for damages, defendants have filed two motions.  The first was filed originally on March 16, 2012, and later amended by a second filing on March 23, 2012.  Doc. # 107.  Defendants' first filing, as amended, is titled "Motion to Dismiss Plaintiffs Manuela Cancino Contreras Morales and/or R.A.M. for Lack of Standing Pursuant to Federal Rule of Civil Procedure, Rules 12(h)(3) or, in the Alternative Rules 12(c), 12(d) and Conversion Per Rule 56" (hereinafter, Defendants' "Standing Motion").  Defendants' second motion, also filed on March 16, 2012, is titled "Motion to Dismiss Action for Failing to Join an Indispensable Party Pursuant to Federal Rule of Civil Procedure, Rules 12(c), 12(d), 12(h)92) and Conversion Per Rule 56 if so Necessary" (hereinafter, Defendants' "Joinder Motion")  (collectively, "Defendants' Motions").  The court will consider both in turn in this memorandum opinion and order.  Although the court had initial determined that oral argument on Defendants' Motions might be helpful and therefore continued oral argument until a time

suitable both to the court and the parties; the court has determined upon further review that oral argument on Defendants' Motions is not necessary.  Local Rule 78-230(h).  The court will therefore order the date previously set for hearing vacated and will order the parties to set a further scheduling conference with the Magistrate Judge.

## FACTUAL BACKGROUND

Defendants' Standing Motion challenges Plaintiffs' status as proper plaintiffs based on what the court assumes is late-acquired evidence tending to show that the marriage between the decedent, Rubin Morales, ("Decedent") and Manuela Morales (hereinafter the "Marriage") was void because Decedent had been previously married to a different woman and that marriage had not been legally dissolved at the time of the Marriage of Decedent and Manuela Morales.  Defendants' Standing Motion was amended to add the allegation that, because the Marriage between Manuela Morales and Decedent was void, R.A.M.[1] lacks standing because the amended complaint fails to allege facts necessary to show that R.A.M. is Decedent's child.  Defendants' Joinder Motion is based on the also presumably late-acquired evidence that Decedent's prior marriage to a person named Stella Morales produced one son, Ruben Jesus Morales, Jr., who is currently twenty-eight years of age and living in North Carolina.

Neither party disputes that Decedent was married to Stella Morales prior to his marriage to Plaintiff.  Although Plaintiffs dispute the admissibility of the Judgment of Divorce of Decedent from Stella Morales (the "Judgment") that is attached to the Declaration of Robert Velasquez, Doc. # 113, on the ground the document lacks authentication, several facts set forth therein are not in dispute.  According to the Judgment, Stella Morales and Decedent married on or about September 28, 1984.  Decedent's only child by Stella Morales, Ruben Jesus Morales, born April 17, 1984, was born somewhat before the marriage but there is no dispute that Ruben Jesus Morales was Decedent's son by Stella Morales.  Decedent legally

---

[1]    For the sake of clarity, the court will reserve the use of the term "Plaintiff" to mean Manuela Cancino Contreras Morales.  The court will use the initials R.A.M. to designate Decedent's child by Plaintiff when such designation is necessary.  The term "Plaintiffs" refers to both R.A.M. and Plaintiff, collectively.

separated from Stella Morales on or about January 13, 1999.  The Judgment was signed by the presiding judge of the Cumberland Superior Court of North Carolina on the "7 day of February, 2002, <u>nunc pro tunc</u> for the 21st day of November, 2001.

The parties do not dispute that Decedent and Plaintiff were married in Zacatecas, Mexico on February 14, 2001.  Based on the Declaration of Manuela Cancino Contreras Morales, attached to the Declaration of Mark Pachowicz, Doc. # 111, Decedent was working in Qatar for a security company at the time of the marriage and traveled back to Qatar after the wedding to finish out his contract with the security company.  According to Plaintiff's Declaration, Decedent continued to work "a number of years" in Qatar before his contract expired.  Plaintiff became pregnant by Decedent and in 2002 she traveled to Georgia where she had family.  R.A.M. was born in Decatur, Georgia in November of 2002.  Following R.A.M.'s birth, child and mother returned to live in Zacatecas, Mexico, where Plaintiff was a school teacher pursuing a masters and Ph.D. degrees in teaching.  Doc. # 111 at 7:14-22.  At the conclusion of Decedent's service in Qatar, he sought employment in Mexico but could find no good jobs there.  Doc. # 111 at 7:23-24.  Decedent moved to North Carolina and worked there while Plaintiff and R.A.M. continued to live in Zacatecas, Mexico.

While the exact dates of some events are not immediately apparent, it appears to the court that neither party disputes that Decedent was legally separated from Stella Morales from the beginning of 1999; that he had one child, Rubin Jesus Morales, by Stella Morales; that he married Plaintiff in Zacatecas, Mexico, on February 14, 2001, while he was working as a contract security provider in Qatar; that he established residency in North Carolina upon his return from Qatar; and that at some point prior to his death, he established residence in Delano, California, where he worked up to the time of his death.

Both parties have submitted evidence outside the pleadings and for which judicial notice is not appropriate.  Both parties appear to recognize that a decision under Rule 12 is not appropriate and that the nature of the evidence submitted requires that Defendants' Motion be

converted pursuant to Rule 12(d) to motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Based on the submissions of the parties and the apparently mutual recognition that the court must convert Defendants' Motions to motions for summary judgment under Rule 56 in order to give consideration to the variety of evidence submitted, the court finds that Defendants' Motions are suitable for decision as motions for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure and will address each of the Motions accordingly.

**PROCEDURAL HISTORY**

This action commenced with the filing of the original complaint on June 30, 2010. The currently-operative Second Amended Complaint ("SAC") was filed on August 6, 2010. Cross-motions for summary judgment were filed by both parties on September 23, 2011. During the pendency of the decision on the cross-motions for summary judgment, Defendants filed a series of motions in limine on February 13, 2012.  Among these were motions dismiss Plaintiff for lack of standing and a motion to dismiss for failure to join an indispensable party. On February 14, 2012, the court issued a memorandum opinion and order granting in part and denying in part the parties' cross-motions for summary judgment and directing the parties to submit further briefing.  On February 17, 2012, an amended briefing schedule was set for opposition and reply on Defendants' motions to dismiss for lack of standing and to dismiss for failure to join.  The trial date of March 12, 2012, was vacated and a new trial date of May 8, 2012, was set.  Defendants motions in limine pertaining to standing and failure to join were withdrawn and re-filed pursuant to the court's order.  Defendants' Joinder Motion was filed on March 16, 2012, and the amended Standing Motion was filed on March 23, 2012.  During the pendency of Defendants' Motions to Dismiss, the court issued its final orders as to the parties' cross motions for summary judgment on March 23, 2012.  Plaintiffs filed their opposition to Defendants Standing and Joinder Motions on April 16, 2012.

**LEGAL STANDARD**

4

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party always bears the initial responsibility of informir and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings,

but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita,

475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749

(9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material,

i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

evidence is such that a reasonable jury could return a verdict for the nonmoving party,

Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.

1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need

not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus,

the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of

Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06

(9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

255, and all reasonable inferences that may be drawn from the facts placed before the court

must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United

States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of

Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the

air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**DISCUSSION**

**I.  Standing**

The claims remaining in this action following the parties' cross-motions for summary judgment are: (1) claims by Plaintiff and R.A.M. as successors in interest to Decedent for violation of Decedent's Fourth Amendment Rights against unreasonable search and excessive use of force; (2) claims by Plaintiff and R.A.M. as individuals for violation of their Fourteenth Amendment Rights to companionship and support of Decedent; (3) Claims for supervisory and municipal liability under 42 U.S.C. § 1983, which may be asserted by Plaintiffs in either their representative or individual capacities; and (4) claims by both Plaintiffs for wrongful death, battery, and negligence under California state law.

At the outset, the court notes that Defendants appear to have conflated to some extent the issues of which states' laws determine the validity of Decedent's marriage to Manuela Morales with which state's laws determine standing to bring Fourth and Fourteenth Amendment claims.  There is no question that, so far as this action is concerned, California is the proper venue.  See 28 U.S.C. § 1391 (venue is proper in the state where defendants reside or where events giving rise to the action occurred).  As noted below, where a survival action is brought in California on behalf of a person who dies intestate in California, the rights of survivors to bring the action is determined according to the laws of intestate succession of the state of California and no other.  See Cheyanna M. v. A.C. Nielson Co., 66 Cal.App.4th 855, 865-866 (2 Dist. 1998) (rejecting argument based on state laws of Texas and Ohio regarding standing in wrongful death case in California).  The court agrees with Plaintiffs who contend that North Carolina law has no applicability here.  With regard to the issue of standing, this court is required to assess the relationship of Manuela Morales and Decedent and R.A.M. and

1    Decedent according to California law.

2         ***A. Fourth Amendment Claims, Battery and Negligence***

3         "Fourth Amendment rights are personal rights which like other constitutional rights,

4    may not be vicariously asserted." Rakas v. Illinois, 439 U.S. 128, 133-134 (1978).  In section

5    1983 actions, however, the survivors of an individual killed as a result of an officer's

6    excessive use of force may assert a Forth Amendment Claim on that individual's behalf if the

7    relevant state's law authorizes a survival action.  Moreland v. Las Vegas Metro. Police Dep't.,

8    159 F.3d 365, 369 (9th Cir. 1998).  Similarly, claims for Battery and Negligence under

9    California law are personal claims belonging to the person suffering the battery or negligent

10   acts.  See Ruiz v. Podolsky, 50 Cal.4th 838, 850 n.3 (2010) ("A decedent's personal injury

11   action does indeed survive the decedent's death and may be brought by his or her estate").

12        California Code of Civil Procedure section 377.20 provides that "a cause of action for

13   of against a person is not lost by reason of the person's death, but survives subject to the

14   applicable limitations period."  In California, an action under section 1983 for violation of

15   personal civil rights of a decedent may be brought by the decedent's personal representative or

16   successor in interest pursuant to California Code of Civil Procedure §§ 377.30 and 377.34.

17   Subsection 377.30 authorizes a decedent's personal representative or, if none, the decedent's

18   successor in interest to commence any action belonging to the decedent that survives his

19   death.  Section 377.34 permits a decedent's successor in interest to recover damages for "the

20   loss or damage that the decedent sustained or incurred before death, including any penalties or

21   punitive or exemplary damages that the decedent would have been entitled to recover had the

22   decedent lived," but excluding damages "for pain, suffering or disfiguration."

23        Here, there is no dispute that Decedent died intestate and therefore his estate does not

24   have a personal representative.  Thus, the issue is whether either or both Plaintiffs may bring

25   Decedent's Fourth Amendment claims and surviving personal state tort claims by qualifying

26   as successors in interest pursuant to section 377.30.  Pursuant to section 377.11 a decedent's

27

28                                                8

successor in interest for purposes of maintaining a cause of action belonging to the decedent means "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of the cause of action." In other words, a person who is heir to a decedent's estate is a successor in interest.

### 1. R.A.M.

Defendants present a lengthy argument to establish that R.A.M. cannot establish that he is Decedent's son and heir pursuant to North Carolina law. As discussed previously, R.A.M.'s relationship to Decedent within the context of this action is determined according to California law. "In general, the issue of a void, invalid or annulled marriage are legitimate (see [Cal.] Civ. Code § 7004 [. . .]) and thus unquestionably heirs with standing under section 377." Nieto v. City of Los Angeles, 138 Cal.App.3d 464, 470 (2nd Dist. 1982). "The 'issue' of a person is defined as 'all [of] his or her lineal descendants of all generations, with the *relationship of parent and child* at each generation being determined by the definitions of *child* and *parent*." Cheyanna M., 66 Cal.App.4th at 866 (quoting Cal. Probate Code § 50, italics and brackets added in quotation). Pursuant to Probate Code section 6450, a parent-child relationship exists for purposes of intestate succession in two situations: (1) between a person and his or her natural parents regardless of the parents' marital status, and (2) between an adopted person and his or her adoptive parents. Cal. Prob. Code §§ 6450(a) and (b); In re Estate of Chambers, 175 Cal.App.4th 891, 894-895 (2009).

What constitutes a "natural father" for purposes of intestate succession is determined by section 7611 of the California Family Code. Subdivision (a) of section 7611 provides that a person is a child's natural father if "[h]e and the child's natural mother are or have been married to each other and the child is born during the marriage or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court." Id. For purposes of this discussion, we take as true Defendants' allegation that the marriage between Decedent and Stella Morales had not

been finally dissolved at the time Decedent and Plaintiff were married in Mexico and the Marriage was therefore bigamous.  In California, as in North Carolina, "a bigamous marriage is 'illegal and void from the beginning' where the former marriage has not be 'dissolved or adjudged a nullity before the date of the subsequent marriage.' [Citation]."  In re Marriage of Seaton, 200 Cal.App.4th 800, 874 (1955) (quoting Cal. Fam. Code §2201(a)(1)).  However, while the Marriage was indeed void *ab initio*, California case law has long provided that "legal fiction" of void bigamous marriage does not operate to deprive any child of that marriage the status of legitimacy that they would otherwise possess.  See Sefton v. Sefton, 45 Cal.2d 872, 875-876 (1955) ("While a strict application of the doctrine of relation back [of invalidity of bigamous marriage] would reach back to deprive those children of their legitimate status, they are, of course, protected against the stain of illegitimacy not only where the marriage is voidable [. . .] but also where the marriage is totally void"); Marriage of Seaton, 200 Cal.App.4th at 809 ("the legal fiction that a void marriage never existed has been abandoned where the rights of children are involved").

Based on the foregoing, the court finds that R.A.M., having been born during the Marriage of Decedent and Plaintiff, however void that Marriage may have been, is the natural child of Decedent under the applicable California laws of intestate succession and therefore is both heir and successor in interest to his father's estate.  R.A.M. therefore has standing to bring claims both on his own behalf and as to such claims as he may bring as successor in interest to his father's estate.

### *2. Plaintiff*

Defendants' principal argument with respect to Plaintiff's standing is their contention that the Marriage was void *ab initio* because the marriage between Decedent and his former spouse, Rosa Morales, had not been legally dissolved as of the date of Decedent's marriage to Plaintiff.  Since the Marriage of Plaintiff and Decedent was bigamous as of the date it was performed, Defendants contend the Marriage was void *ab initio*, not voidable.  Plaintiffs

contend that Defendants' argument regarding the status of the Marriage inappropriately relies on North Carolina law.  While the arguments with regard to South Carolina law are not appropriate for purposes of determining the relationship of parties under California laws of intestate succession, it is the case, as noted above, that bigamous marriages are as void in California as they are in North Carolina.  Although Plaintiffs object to the evidence indicating the date of the Judgment of Divorce in Decent's prior marriage on the ground it lacks authentication and lacks any evidence that the marriage was invalid in *Mexico*, Plaintiffs do not provide any evidence contradicting the date of Decedent's Marriage to Plaintiff and the date of entry of judgment in the dissolution of Decedent's former marriage.  Since California law holds the Marriage void *ab initio* on the uncontested facts, just as North Carolina would, it is not relevant whether the Marriage was or would have been valid in Mexico.  The court finds that, for purposes of this decision, the Marriage between Plaintiff and Decedent was not valid.

California Family Code section 2251 provides, in pertinent part, "[i]f a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall:  (1) Declare the party of parties to have the status of a putative spouse."

> [A] *subjective* good faith belief in a valid marriage by itself, even when held by a credible and sympathetic party, is not sufficient.  A determination of good faith is tested by an objective standard.  Therefore, a proper assertion of putative spouse must rest on facts that would cause a reasonable person to harbor a good faith belief in the existence of a *lawful* California marriage.

Welch v. State of California, 83 Cal.App.4th 1374, 1378 (5th Dist. 2000) (italics in original, internal citations omitted).  Although there is no single set of facts that must be proven to show putative spouse status, California courts have generally regarded the following as strongly supportive: (1) the couple complies with the formalities of marriage including the obtaining of a license and the filing of same in the appropriate jurisdiction, (2) the marriage is solemnized and celebrated in good faith, and (3) there is no fact known to the putative spouse during the marriage or that becomes known during the term of the marriage that would

11

indicate to a reasonable person the invalidity if the marriage.  See id. at 1378-1379.

Defendants contend that Decedent's and Plaintiff's relationship  "would not have led a reasonable person to believe in good faith that their marriage was in fact valid because of the tenuous nature of their relationship."  Doc. # 107.  While Defendants proffer a number of facts to show that the relationship was "tenuous," there is no authority offered for the proposition that tenuousness indicates or implies *legal* invalidity.  Even if the court accepted the proposition that the arrangement that constituted Decedent and Plaintiff's Marriage showed signs or symptoms of insincerity, a proposition this court has previously rejected, that proposition misses the point.  Where, as here, evidence  shows compliance with the formalities required in California for a lawful marriage, a party challenging a plaintiff's status as putative spouse must show facts were known to the alleged putative spouse that would indicate the  marriage was known to be *legally* invalid, not relationally questionable.  The court concludes that Plaintiff has alleged facts and provided supporting admissible evidence to show a reasonable, good-faith basis for belief that her Marriage to Decedent was lawful.  Defendants have failed to adequately negate Plaintiff's evidence to show that there remains no issue of material fact that Plaintiff is not, in fact, the putative spouse of Decedent.

In California it has long been settled that the putative spouse of an intestate decedent is entitled to the distribution of the estate that would accrue to the "surviving spouse" under the rules of intestate succession.  In re Krone's Estate, 83 Cal.App.2d 766, 769-770 (2nd Dist. 1948); see also, Estate of Sax, 214 Cal.App.3d 1300, 1304-1305 (4th Dist. 1989) (reviewing contexts in which California Courts have held "surviving spouse" to encompass term "putative spouse").  Since Plaintiff, as putative spouse,  has the same status as a surviving spouse with regard to distribution of Decedent's estate, she is a beneficiary of his estate and therefore is a successor in interest pursuant to Cal. Code Civ. Pro. § 377.11.  It follows that Plaintiff is therefore empowered pursuant to Cal. Code Civ. Pro. §§ 377.30 and 377.34 to bring Decedent's personal claims under the Fourth Amendment and to recover damages

therefrom as authorized by statute.  The same is true of Decedent's surviving tort claims under California common law.

Defendants motion for summary judgment on the issue of standing with regard to Decedent's personal claims under the Fourth Amendment and with regard to Decedent's personal injury claims under California state law will therefore be denied as to both R.A.M. and Plaintiff.

### B. Fourteenth Amendment

It bears emphasizing that while Fourth Amendment and personal injury claims belong to Decedent and are brought on his behalf by his successors in interest, claims for damages arising out of the loss of Decedent's companionship and support belong to the survivors and are asserted by them on their own behalf.  The two claims for relief that belong solely to the Plaintiffs as individuals are the claims for violation of a liberty interest stemming from the loss of familial companionship and support under the substantive Due Process Clause of the Fourteenth Amendment and the claim for wrongful death under California law.  While 42 U.S.C. § 1988(a) provides that a plaintiff in a section 1983 action must look to a state's statutes regarding survival of a decedent's claims, Moreland, 159 F.3d at 369; the same is not true for constitutional claims belong to the plaintiff or plaintiffs as individuals.  See id. at 371 (regardless of whether plaintiffs have standing to assert a Fourth Amendment claim they may assert "a Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with the decedent); Estate of Amaro v. City of Oakland, 2010 WL 669240 (N.D. Cal.) at *14 ("While [Cal. Code Civ. Pro.] Section 377.60 defines the range of individuals who may bring a wrongful death tort claim in California, it does not (and cannot) define the outer bounds of constitutionally recognized liberty interests for substantive due process claims brought under section 1983").

Thus, while one or the other of the Plaintiffs may not be able to show the requisite level of financial dependence on Decedent for purposes of satisfying the standing

13

requirements to bring a wrongful death claim under state tort law, the ability to bring a claim of constitutional deprivation under the substantive due process clause of the Fourteenth Amendment is determined by relationship, not dependence.  With regard to R.A.M., the analysis straightforward.  Decedent was R.A.M.'s natural father under California law.  There is no question that a child has standing to sue for depravation of his liberty interest in his father's companionship and support based on the father-son relationship.  Moreland, 159 F.3d at 370.  Where the facts alleged by Defendants go to the strength, immediacy, or intensity of the father-child relationship, rather than to its existence, Defendants' arguments will fail unless they can produce legal authority to show that standing is lacking at some particular level of impairment of the father-child relationship.  The court is aware of no such authority.

As to Plaintiff, the issue is complicated somewhat by the fact that Plaintiff is Decedent's putative spouse, not spouse.  The substantive due process rights of family members arises out of their liberty interests in maintaining familial relationships without undue governmental interference.  Moore v. City of East Cleveland, 432 U.S. 494, 499 (1977).  This court can see no basis for distinction of rights involving the liberty interest of a spouse in her familial relationship with her husband and a putative spouse asserting the same rights.  In both cases, the values that are to be preserved is the "freedom of personal choice in matters of marriage and family life."  Id.  Regardless of the somewhat unconventional nature of Plaintiff's good faith commitment to what she reasonably believed to be her lawful marriage to Decedent, the court can see no reason to hold that she should have a lesser liberty interest in that relationship due to an error in timing than would be enjoyed by a spouse in a lawful marriage.

In any event, under the legal standard governing review of Defendants' Standing Motion requires that Defendants has the initial burden to show there remains no issue of material fact with regard to Plaintiff's standing to bring her Fourteenth Amendment claims. While Defendants have failed generally to adequately parse the issue of standing as to the

different kinds of claims brought by Plaintiffs, what stands out is that Defendants have failed

to make any identifiable argument that specifically addresses Plaintiff's standing with regard

to the Fourteenth Amendment claim.  Defendants' only argument regarding Plaintiffs'

standing to bring claims that are personal to them is that neither Plaintiff nor R.A.M. were

dependent on Decedent within the meaning of California Civil Procedure Code subsection

377.60(b).  While that contention has relevance to Plaintiffs' claims for wrongful death under

California law, it has none here.  The court finds Defendants have failed to carry their initial

burden to show there is no issue of material fact as to either Plaintiff's or R.A.M.'s standing to

bring personal claims pursuant to section 1983 for violation of their familial liberty interests

under the Due Process Clause of the Fourteenth Amendment.

### C. Wrongful Death

California Civil Procedure Code subsection 377.60(a) provides standing in a wrongful

death action for children of the decedent regardless of the child's dependence on the decedent.

Having determined that Decedent was R.A.M.'s "natural father" for purposes of section 377,

it follows that R.A.M. has standing to maintain a wrongful death claim.  With regard to

putative spouses Civil Procedure Code subsection 377.60(b) provides:

> Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents.  As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

From the plain language of the statute, the court finds that the term "putative spouse"

has the meaning previously discussed, and that the term "dependent on the decedent" is a term

that modifies "putative spouse."  Thus, Plaintiff's standing to maintain a wrongful death claim

against Defendants depends on whether she was dependent on Decedent within the meaning of

subsection 377.60(b).

With regard to the dependence of Plaintiff on Decedent, both parties agree that

Decedent sent Plaintiff and R.A.M. about $50 to $60 per week.  Plaintiffs contend that the

15

amount, while small by most standards, amounted to something in the neighborhood of 28%
to 32% of Plaintiff's monthly income as a teacher in Mexico.  Defendants allege that the only
time Decedent sent money to Plaintiff was from the time he moved to Delano in 2008.
Plaintiffs imply, without directly stating, that upon return from Qatar Decedent could not find
regular work in Mexico or in the U.S. until he found employment in Delano.  Plaintiff alleges
that she received support from decedent while he was working in Qatar but the amount is not
specified.

Defendants correctly contend that dependence in the context of section 377.60 means
financial dependence.  Hazelwood v. Hazelwood, 57 Cal.App.3d 693, 697 (1976).  Defendants
also properly rely on Perry v. Medina, 192 Cal.App.3d 603 (5 Dist. 1987) for the proposition
that dependence may be said to exist where the recipient relies on the financial contribution of
the decedent for the necessities of life – food, shelter, clothing, medical treatment – but not
where the decedent's contribution represents is intended to secure luxuries or non-essential
amenities.  See id. at 610 (financial support which aids "to some extent" in the procuring of
those things that "one cannot and should not do without" indicates dependent relationship).
Neither party has alleged facts sufficient to show there is no issue of material fact with regard
to Plaintiff's financial dependence on Decedent.  Plaintiff contends that 30% of Plaintiff's
income was derived from Decedent's contributions and that a contribution of that magnitude
shows dependence.  Defendants allege that Plaintiff is self-supporting, both in regards to
herself and in regards to R.A.M.'s needs for food, shelter, clothing and education and medical
care because of her job as a teacher and owns her own home and is therefore not financially
dependent.

Neither argument is completely persuasive.  The touchstone of financial dependence
for purposes of standing under subsection 660(b) is reliance of the recipient *"to some extent"*
on the contribution of the decedent for access to life's *necessities*.  The court agrees with
Defendants that, to the extent Decedent's contributions were intended as savings for the

purchase of a new home, Plaintiff's reliance on such contributions do not indicate dependence. On the other hand, noting that an undetermined portion of Decedent's weekly contribution went to savings for future expenditures is not the same as establishing that none or only a small part of Decedent's contribution went for Plaintiff's necessities.  Plaintiff testified that she was "dependent" on Decedent's support.  Whether she fully understood the meaning of that term in the context of a wrongful death action is not clear.  Defendant's however, have not alleged facts sufficient to fully negate Plaintiff's assertion of dependency.  Construing all evidence in the light most favorable to Plaintiff, the court must conclude that Defendants have failed to carry their burden to show there remains no issue of material fact as to whether Plaintiff was dependent on Decedent's contribution.  Defendants' motion for summary judgment must therefore be denied in its entirety.

## II.  Indispensable Party

The core of Defendants' Joinder Motion is their contention that Decedent's son by his prior marriage to Stella Morales – Ruben Jesus Morales, Jr. (hereinafter "Ruben") – is an indispensable party because he is also Decedent's natural son and is therefore entitled to take under California laws of intestate succession.  In their reply to Plaintiffs' opposition to Defendants allege for the first time that there may exist an additional spouse in Mexico named Manuela Holguin Morales.  Rather than grapple with the problems occasioned by the late revelation of the additional potential spouse at this point, the court will begin its analysis by determining whether and under what conditions a party is indispensable *as a plaintiff* where there is an action involving the estate of a decedent and the party is an actual or potential heir.

Defendants Joinder Motion is based on Rule 19 of the Federal Rules of Civil Procedure which provides as follows in pertinent part:

> (1) ***Required Party***.  A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as and indispensable party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave and existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Defendants' argument is confusing; perhaps partly because Defendants have failed to identify and distinguish the interests at play.  As discussed above, there are two interests in this action; the interests of the Decedent in recovery of damages arising from his personal claims as represented by his successor or successors in interest, and the interests of Decedent's surviving children and spouse or putative spouse for their individual damages.  With regard to the interests of Decedent's estate, the court has found that either R.A.M. or Plaintiff are successors in interest and are therefore entitled to represent Decedent's estate.  Defendants appears to be arguing that Rubin, as Decedent's son and heir, has an interest in Decedent's estate and is therefore an indispensable party.  Defendants' argument misconstrues the interests at play here.  So far as Decedent's personal claims are concerned, including his Fourth Amendment and personal tort claims, this action is concerned with the amount of damages due *Decedent's estate*; if any, not with the distribution Decedent's estate among Decedent's heirs.  So far as this action is concerned, any person who is a successor in interest may represent Decedent's claims for the benefit of his estate.  If Ruben or anyone else has a claim to some portion of Decedent's estate and the claim or claims are disputed, they may adjudicated in a separate action.  Neither logic or any authority the court can find suggest that joinder of all heirs as plaintiffs is necessary to obtain complete relief for a decedent's estate.

With regard to the interests of Plaintiffs as individuals seeking damages for *their* losses arising either from the loss of companionship and support under the Fourteenth Amendment or from state tort claims for wrongful death, the requirement for joinder of all potential

18

claimants as plaintiffs depends on the structure of the damages award under state and federal law.  With regard to Plaintiffs' claims pursuant to 42 U.S.C. § 1983, the claims of the survivors of a decedent for the losses of the survivors arising from the loss of the decedent's companionship and support arise from the violation of the survivors' rights under the substantive due process clause of the Fourteenth Amendment.  In order for Defendants to show that Ruben or any other survivor is a necessary party with regard to the section 1983 claim, they must show that complete "relief among *existing* parties" would not be available in the absence of Ruben or other survivors.  Rule 19 (italics added).  This Defendants have failed to do.  So far as this court can determine, the liability of officials and official entities under the Fourteenth Amendment – unlike the liability of official entities to the decedent under the Fourth Amendment which is dependent on state survival statutes – is independent of state law strictures or definitions.  As Plaintiffs point out, under federal law there is no set or limited common fund that is to be distributed among all survivors.  With regard to Fourteenth Amendment liability, Plaintiffs and Defendants may fully litigate Plaintiffs claims and leave unaffected any Fourteenth Amendment claims that may exist between Defendants and Rubin or Defendants and Manuela Holguin Morales.

In short, Defendants have failed to show that the litigation of Plaintiffs' Fourteenth Amendment claims against Defendants in the absence of either or both Rubin or Manuela Holguin Morales would impair their interests or impair Defendants' ability to defend their interests.  While it is possible that Defendants might be subject to multiple *litigations* in the absence of all possible plaintiffs, it does not follow that Defendants would be at "a substantial risk of incurring double, multiple, or otherwise inconsistent *obligations* because of the interest."  Rule 19(a)(1)(B)(ii) (italics added).  Defendants have not shown that any party's interests would be impeded or at risk as a consequence of failure to join either or any other potential plaintiffs.  The court therefore concludes these potential plaintiffs are not indispensable parties with regard to Plaintiffs' Fourteenth Amendment claims.

19

1    With regard to claims under state wrongful death tort law, whether all survivors are

2    indispensable parties is determined by the provisions of the states' wrongful death statute.  So

3    far as the court is aware, only two jurisdictions require the joinder of all survivors in a

4    wrongful death claim.  This is true at least in Louisiana and Mississippi.  In Morrison v. New

5    Orleans Public Service, Inc., 415 F.2d 419 (5th Cir. 1969), the Fifth Circuit noted that the

6    state law of Louisiana "permits only a single lump-sum damage award for the pain and

7    suffering of a wrongfully killed person, and this award must be obtained in a single action to

8    which the surviving spouse and all the children are parties."  Id. at 424.  The Morrison court

9    therefore held *all* the decedent's children were "persons to be joined if feasible" under Rule

10   19.  Id.  Similarly, in Harpster v. Thomas, 442 F.Supp.2d 349 (S.D. Miss. 2006), the district

11   court noted that Mississippi statute provided that "'there shall be but one (1) suit for the same

12   death which shall ensue for the benefit of all parties concerned" and that "in such action the

13   party or parties suing shall recover such damages allowable by as the jury may determine to be

14   just, taking into consideration all the damages of every kind to the decedent and all damages

15   of every kind to any and all parties interested in the suit.'"  Id. at 352 (quoting Miss. Code

16   Ann. §11-7-13.

17   California, so far as the court can determine has no such limitations on actions for

18   wrongful death, nor have Defendants pointed to any other specific provision of California law

19   that would require the same outcome as obtained in either Morrison or Harpster.  The court

20   finds it telling that there are very few cases pertaining to potential plaintiffs as indispensable

21   parties in cases involving wrongful death, Fourth Amendment or Fourteenth Amendment

22   claims.  The paucity of such cases leads the court to speculate that there are relatively few

23   situations where the joinder of potential plaintiffs in these cases is an issue at all and fewer

24   still when it comes to such claims in California courts.

25   The court is also aware that not much has been decided with regard to Manuela

26   Holguin Morales.  The court finds it need not reach the problems that would otherwise arise

27

28                                          20

from the fact that Defendants' raised concerns regarding her in their reply brief.  The court finds that Manuela Holguin Morales' status as indispensable party is not different in any meaningful way from that of Rubin.  Neither are persons who should be joined if feasible under Rule 19.

THEREFORE, in consideration of the above, it is hereby ORDERED that Defendants' Standing Motion and Joinder Motion are each DENIED in their entirety.  As previously discussed, the hearing date of May 15, 2012, previously set for hearing of Defendants' Motions is hereby VACATED and no party shall appear at that time.  The parties are hereby ORDERED to meet and confer to select a date and time that is suitable to each for a further scheduling conference and shall schedule such date and time with the Magistrate Judge. IT IS SO ORDERED.

Dated:   __May 10, 2012__                    _____

                                             CHIEF UNITED STATES DISTRICT JUDGE